ALBERT SOWLES *vs.* MYRON W. BAILEY.

January Term, 1897.

Present: ROSS, C. J., TAFT, ROWELL, TYLER, MUNSON, START and
THOMPSON, JJ.

*Certiorari—V. S. 1640—Estoppel.*

The writ of *certiorari* does not lie for the correction of errors which might
have been set right by appeal.

V. S. 1640 confines the writ to the reversal of final judgments or decrees.

One may estop himself from the right to invoke the aid of the writ by
neglecting to do so until after the rights of third parties have intervened,
and especially by engaging in and consenting to the proceedings which
he afterwards seeks to have declared void.

PETITION FOR WRIT OF CERTIORARI, to the supreme court
for the County of Franklin. Heard at the January Term,
1897. The case is fully stated in the opinion.

*E. A. Sowles* for the petitioner.

The petitionee, by reason of his interest as creditor, was
wholly without jurisdiction in the premises. V. S. 2337,
901, 2048; *Moses* v. *Julian,* 45 N. H. 52; *Coffin* v. *Cottle,* 9
Pick. 290; *Sigourney* v. *Sibley,* 21 Pick. 101: 22 Pick. 507;
*Freelove* v. *Smith,* 9 Vt. 180; *Sanders* v. *Pierce,* 68 Vt. 468;
*Foot* v. *Morgan,* 1 Hill, 654; *Oakley* v. *Aspinwall,* 3 N. Y.
547; *Hawley* v. *Baldwin,* 19 Conn. 589; *Hesketh* v.
*Braddock,* 3 Burr. 1847; *Pearce* v. *Atwood,* 13 Mass. 339;
*Wilson* v. *Wilson,* 36 Ala. 655; *Bacon's Appeal,* 7 Gray
391; *Knight* v. *Hardeman,* 17 Ga. 253; *Matter of Dodge,* 77
N. Y. 107; *Reg.* v. *Hertfordshire,* 6 Q. B. 753: 51 E. C. L.
753; *Gay* v. *Minot,* 3 Cush. 352; *Hall* v. *Thayer,* 105 Mass.
219; Wells, Juris. § 172; I Story, Eq. Juris. §§ 310-312.

The lack of jurisdiction could not be supplied, waived or
cured by the consent or participation of the petitioner. The
proceedings are absolutely void. *Lamson* v. *Worcester,* 58

Vt. 381; *Stockwell* v. *White Lake*, 22 Mich. 341; *Oakley* v. *Aspinwall*, 3 N. Y. 547; *Strong* v. *Strong*, 9 Cush. 570; *Post* v. *Black*, 5 Denio 66; *Wise* v. *Withers*, 3 Cranch 331; *People* v. *Smith*, 55 N. Y. 135; Wells, Juris. § 57; *Carleton* v. *Taylor*, 50 Vt. 220, 227; *Vaughn* v. *Congdon*, 56 Vt. 111; *Barrett* v. *Crane*, 16 Vt. 246; *Darling* v. *Bowen*, 10 Vt. 148; *Walbridge* v. *Hall*, 3 Vt. 114; *Bates* v. *Hazeltine*, 1 Vt. 81.

Hence the granting of the writ is matter of legal right and does not, as in other cases, rest in the sound discretion of the court.

*H. A. Burt, Wilson & Hall* and *Farrington & Post* for the petitionee.

The supreme court has no power to issue the writ to the court of insolvency. The statute has provided the only means for correcting errors in the latter court by appeal to the county court and exceptions to the supreme court. *Peters* v. *Peters*, 8 Cush. 529; II Spelling on Extr. Relief, §§ 1890–1918; *Petition of Tucker*, 27 N. H. 405; *B. &. M. R. R.* v. *Folsom*, 46 N. H. 64; *Brown* v. *Webber*, 6 Cush. 563; Harris, *Certiorari*, §§ 20–44.

If the petitionee is right in his position that the proceedings are absolutely void, there is no occasion for the writ. *Peters* v. *Peters*, 8 Cush. 529; II Spelling, Extr. Relief, §§ 1890–1918.

The writ is barred by the statute of limitations as to all orders not made within one year next preceding the service of the petition. The only order within the year was made at the request of the petitioner.

The petitioner is estopped by his own conduct. *State* v. *Haynes*, 35 Vt. 565; V. S. 1233; *Bellows* v. *Weeks*, 41 Vt. 590; *Quinn* v. *Halbert*, 52 Vt. 353; *Richards* v. *Moore*, 60 Vt. 449; Spelling, *supra*, § 1901; *Ellis* v. *Smith*, 42 Ala. 349; *Collins* v. *Hammond*, 59 Ala. 448.

Ross, C. J. This is a petition, dated October 14, 1896, for a writ of *certiorari*, preferred to this court at its October

General Term, 1896, against Myron W. Bailey, as judge of
the court of insolvency within and for the district of
Franklin.   The petitioner avers that proceedings in
insolvency were commenced against him before the
petitionee as such judge in 1885, and that the petitionee as
such judge, had made various decrees and orders against
the petitioner down to the time of filing this petition; that
the petitionee, as such judge, had no jurisdiction in the
premises; and that the files and records therein of the court
of insolvency are erroneous and illegal for the causes recited
in and annexed to the petition.   For causes of error the
petitioner avers that, before and at the time of the
adjudication, and ever since, the petitionee was the owner
and possessor of a certain claim, debt, or account, against
the petitioner, which, in 1889, in his own behalf—he then
being an attorney at law—the petitionee proved, allowed,
and adjudicated in the court of insolvency, whereby the
petitionee was and is interested, as a creditor or otherwise,
in the questions and proceedings decided, and to be decided
in and by the court of insolvency, and was and is interested
in the event of the cause, either, by his interest in the claim,
or by reason of having acted as an attorney in the proof
thereof; and so became disqualified from acting in a judicial
capacity, either as trier, or otherwise, in the matter of the
insolvency proceedings; that the petitioner on October 1
and 7, 1896, filed in the court of insolvency motions and
objections to the jurisdiction of the petitionee, as judge of
the court of insolvency, in the matters and proceedings
therein against the petitioner.   For these errors he prays
that the writ may issue, and, on the record being certified
to the court, that all judgments, orders, and decrees in the
insolvency proceedings in the court of insolvency may be set
aside and declared void.

Upon presentation of the petition, the court issued an
order to the petitionee to answer the petition, and made
orders in regard to taking testimony.   The answer was duly

filed, and the testimony taken and filed. The testimony is voluminous. About many things the parties and witnesses agree. In regard to others they disagree. These facts, in substance, appear. The petitionee has been judge of probate for the district of Franklin for a good many years, and *ex officio* judge of the court of insolvency. In 1877 and 1878 the petitioner was administrator on the estate of C. S. Hogle, then being administered in the probate district, before the petitionee. During the years of 1877, 1878 and 1882 fees accrued in the settlement of that estate against the petitioner to the amount of $39. By the statute, it was the duty of the petitioner to pay these fees to the petitionee, as judge of probate, for the benefit of the state. There are fees payable not for the benefit of the state, but it is not shown that any such are in this bill. It was the duty of the petitionee, as such judge, to account for them in his settlements with the auditor of accounts semi-annually. It does not appear whether he did, or did not, so account for them. During all the time covered by the proceedings in insolvency, the petitioner knew that these fees were due from him as such administrator to the petitionee, as such judge of probate, and knew that the petitionee made proof of them against his estate in insolvency, at the time they were proved in 1889, or soon thereafter, and made no objection thereto. On the testimony of the petitionee, the petitioner expressly assented to their allowance against his estate.

In March, 1884, George W. Foster, claiming to be a creditor of the petitioner, filed, in the court of insolvency, a petition to have the petitioner adjudged an insolvent. No action was taken on this petition until May when the National Bank of Middlebury intervened as a petitioning creditor. The two petitions were heard together by the petitionee, acting as judge of the court of insolvency, in July, 1884. He ordered the petitions dismissed. From this order the National Bank of Middlebury appealed to the

county court.    In the latter court, such proceedings were
had, that, at its April Term, 1886, the petitioner was
adjudged to be insolvent, and the cause was remanded to
the court of insolvency to be proceeded with.    Thereupon,
in compliance with the order of the court, held by the
petitionee, the petitioner filed a schedule of his debts and of
his assets.    These showed that the petitioner was deeply
insolvent.    The first meeting of the creditors was called
and holden.    The petitioner assented to the debts then
proved against his estate, and agreed, with those voting,
upon the assignees chosen.    One was his brother-in-law, and
president of the National Union Bank of Swanton.    The
other had given certain notes for the petitioner's accommo-
dation to the First National Bank of St. Albans, of which
the petitioner had been cashier.    The petitioner also had
large interests in the National Union Bank of Swanton.
His brother, Merritt Sowles, was president of the First
National Bank of Plattsburgh in which the petitioner had
an open, unsettled account.    His estate was involved with
the affairs of these three banks.    The two first were
insolvent, and then, or soon after, placed in the hands of
receivers.    Complications and suits arose between his estate
and these banks which delayed the settlement of his estate.
The assignees also brought a suit against the Burlington
Savings Bank, to have a mortgage annulled which the
petitioner had given to the Savings Bank, to secure a debt
due it, shortly before the Foster petition was filed.    These
suits except that last named were finally compromised with
the consent of the petitioner, and approval of the petitionee,
acting as judge of the court of insolvency.    Every debt, or
nearly every debt, proved against his estate was originally
proved with the petitioner's consent and approval.    Since
then, he, and his brother Merritt have moved to have the
allowance of some of the debts vacated, or some portions
of them, on the claim that the consent was given in
ignorance of certain facts touching their validity against his

estate. These claims were made after the petitioner and his brother, Merritt, became interested, by having purchased quite an amount of the claims proved. The petitioner was in full accord with, and consented to, all the actions of the assignees, and of the court, to January, 1891. The suits, and the relation of his estate to the affairs of the First National Bank of St. Albans and of the National Union Bank of Swanton were adjusted in 1889. Soon thereafter the petitioner, mostly through his brother, Merritt, and the First National Bank of Plattsburgh, began to purchase claims proved against his estate, and schemes for a settlement of his estate by way of compromise, have been on foot ever since. None of them ripened into an adjustment. The parties do not agree in regard to whose fault defeated their accomplishment. At times the petitioner and his brother, Merritt, did not agree. The assignees were interested in some of the allowed claims, which the petitioner and Merritt desired to have disallowed, and disagreement arose in regard to this. One of these claims was in favor of the First National Bank of Plattsburgh. Early in 1896, Merritt Sowles, the First National of Plattsburgh, and the assignees, owned nearly all, if not all the claims proved against the petitioner's estate in insolvency. The petitioner claims to be interested in those standing in the name of his brother, Merritt. The petitioner and Merritt did not agree in regard to the proposed compromise. Hence, with the petitioner's approval and consent, and under an order of the court, after a good deal of negotiation, the assignees effected a settlement of all the claims owned by Merritt Sowles, and by the First National Bank of Plattsburgh, August 8, 1896. By this settlement all such claims were cancelled, and a certain mortgage which the Bank held was transferred to the assignees. During these years, settlements had been made with other claimants, with the consent and approval of the petitioner, and of the court. Also property belonging to his estate had been sold

and conveyed. Some of it had been conveyed to a trustee, and some to the petitioner with a view of carrying into effect some of the proposed compromises. The assignees found that the petitioner had conveyed some real estate, which they claimed to be a part of his estate, to his daughter. They also claim, that he had property in his hands which belonged to his estate. He made a claim for services, rendered for the assignees, in the settlement of his estate. Early in 1896, the assignees petitioned the court of insolvency to have the petitioner called before the court and examined in regard to his property, which they claimed he had not turned over to them, and in regard to his conveyance of some of it to his daughter. There were two petitions brought for this purpose. The hearing of them had been continued, from time to time, but, at length were brought on, October 1, 1896. The petitioner refused to answer, when put under oath for the purpose of being examined, and objected that the petitionee was without jurisdiction in the matter, because of the proof of the claim for probate fees, made in 1889. The petitions were then discontinued and the petitionee filed a release under seal of the claim for probate fees, proved. The assignees then renewed their petitions, and called the petitioner and his daughter before the petitionee, as judge of the court of insolvency for examination. On being sworn both declined to answer, and this petition was brought to have the writ of *certiorari* issue to bring up and quash the entire record in the insolvency proceedings against the petitioner.

This is an outline of the main features and facts of the .case. It is to be observed that the only order or decree of the court of insolvency shown to be made, in the insolvency proceedings against the petitioner, within the year next before this petition was brought, is that approving the purchase and cancellation of the debts proved against his estate, from Merritt Sowles, and the First National Bank of Plattsburgh, of which the petitioner at the time approved,

and of which he does not especially complain, either in his petition or in his testimony. Edward A. Sowles, the brother and attorney, in his brief of facts, makes many and grevious charges against the assignees and against the petitionee, in his action as judge of the court of insolvency, but he does not say that the purchase and cancellation of the claims proved against the estate, held by Merritt Sowles and by the First National Bank of Plattsburgh were improvident, nor does he ask especially to have the decree of approval of the purchase and cancellation vacated and set aside. He contends vigorously that the debt proved in favor of the First National Bank of Plattsburgh was unjustly proved, and ought to be expunged from the list of debts proved. He admits that the petitioner consented to most of the orders and decrees of the petitionee, acting as judge, now complained of, and of most of the acts of the assignees, but contends that he was induced to take this course, in the vain endeavor to get his estate settled.

The question is whether on this outline, it is the duty of this court to issue the writ of *certiorari*. It is an extraordinary remedy, not applicable to courts whose proceedings are according to the course of common law. Errors, in those courts, are rectified by appeal, exceptions, and writs of error. It is quite generally held that this writ will not be allowed where the errors of an inferior court, whose proceedings are not according to the course of the common law, can be corrected by appeal to a higher court. *Logue* v. *Clark*, 62 N. H. 184. In the insolvency proceedings the petitioner could have appealed from an adjudication of insolvency to the county court. V. S. 2156. Appeals are also allowed to creditors and assignees in regard to allowance or disallowance of claims to an amount exceeding twenty dollars. V. S. 2058, 2090. They are allowed to the debtor, creditor, or assignee to the court of chancery from the decision of the judge upon the question of granting the certificate of discharge. V. S. 2136. If, as now contended,

the fact that the petitionee was connected with the probate fees, as heretofore stated, disqualified him from acting as judge of insolvency in the matter of the petitioner, the latter could have availed himself of that fact both when the petitions of Foster and the National Bank of Middlebury were before the petitionee for hearing, and on the appeal in the county court. The attorney for the petitioner concedes that the granting of this writ rests in the sound, legal discretion of this court. It cannot properly be contended that sound, legal discretion requires the granting the writ to the extent of blotting out the record of the whole insolvency proceedings, covering a period of twelve years, in and by means of which rights to property have been compromised and settled, the title to property transferred, and the interests of third parties become fixed and cannot be restored to their former condition, especially when the petitioner, if not a party, has been active in, and consented to, nearly all that has been done therein. A party, as shown by all the authorities, may estop himself from the right to invoke the aid of this summary remedy by laches, or failure to invoke it until the rights of third parties have intervened and become fixed, so that they cannot be restored to their former condition. It is to take, in a measure, the place of a writ of error when that writ is not available. It is a common law writ, and available to a party only under the circumstances provided by statute. By statute, it is coupled with a writ of error. V. S. 1640 reads, "A writ of error or petition for *certiorari* shall be commenced and served on the adverse party within one year after the rendition of the judgment to reverse which such writ or petition is commenced." From the language of this section its use is evidently confined to the reversal of final judgments or decrees. This clearly requires this court to deny the writ under the circumstances of this case. At most it could only reach and vacate the decree of approval of the purchase and cancellation of the claims proved against his estate,

owned by Merritt Sowles and the First National Bank of Plattsburgh which is an interlocutory order. Besides, what is shown in regard to his approval and helping on that purchase forbids this court from granting it.

We thus dispose of this application without considering many of the questions discussed before us. In this disposal, the court is not to be understood as approving of the course of the petitioner in endeavoring to manage and control the settlement of his estate by compromise, so as to save a good share of it to himself; nor of the appointment nor acceptance by assignees of the settlement of an estate in which they are largely interested, and in which conflicting interests may arise; nor of a judge in taking jurisdiction of the settlement of an insolvent estate, in which he may be directly or indirectly interested, or in taking steps, with consent of the adversary party, or otherwise, which may apparently give him pecuniary interest, however small, in its settlement.

*The petition is dismissed with costs.*