IN RE PETITIONS OF MELFORD B. BIBENS.

(61 A2d 598)

October Term, 1948.

Present: MOULTON, C. J., BUTTLES, JEFFORDS and CLEARY, JJ. and ADAMS, Supr. J.

Opinion filed October 9, 1948.

*Franklin P. Jones* and *Christopher A. Webber* for the petitioner.

*Gibson, Gibson & Crispe* and *Reuben Levin* for the petitionee.

JEFFORDS, J. Subsequent to the primary election held September 14, 1948, Melford B. Bibens, who was a candidate for the nomination by the Republican party for the office of senator from Bennington county, brought to this Court a petition for a writ of Certiorari and later brought a petition for a writ of Prohibition. These petitions were heard together on an agreed statement of facts which applied to both. In this agreed statement the following material facts appear:

At the election above referred to there were three candidates for the republican nomination for county senator. Bennington county is entitled to only two senators. The result of the election as shown by the official canvass of the votes was as follows: Carleton E. Howe 2647, Melford B. Bibens, 1944, and James B. Gibney 1927. As a result of the canvass George H. Plumb, clerk for Bennington county, issued certificates of nomination to Howe and Bibens. Gibney then made affidavit under the provisions of Sec. 210 of the Vermont Statutes, Revision of 1947, (P. L. § 172) to the Honorable Stephen S. Cushing, a superior judge, to contest the nomination of Bibens. In the affidavit which was signed and sworn to by Gibney various reasons were set forth in support of his claim that a mistake had been made in the count of the votes

in the various towns in the county. It is unnecessary to set forth fully these reasons for the claim that a mistake had been made in the count. Among those given was the defective lighting system in the room when and where the Bennington votes were counted which together with the heavy vote cast delayed those counting the votes who became tired and weary and were not willing to adopt the suggestion made by the chairman of the board of civil authority to recheck the ballots which had been counted; in calling the results in Bennington, at least, the checkers used "Bib" for Bibens and "Gib" for Gibney and that this similarity in the names as so called led to a mistake being made; that there were conflicting reports made in three towns as to the number of votes cast for Bibens and Gibney.

Upon receipt of the affidavit Judge Cushing gave notice to Bibens to appear for a hearing in the matter. The hearing was held, Bibens and his attorney being present. Also present was the chairman of the board of civil authority for the town of Bennington, which was one of the towns in which the vote was questioned. Gibney offered to place the chairman on the stand as a witness to prove the affidavit as far as it pertained to the matters set forth therein relating to the town of Bennington. Judge Cushing said that this was unnecessary and in fact no evidence of any kind was introduced. Bibens took part in the hearing and made no objections to lack of service or proper hearing but he did object to the jurisdiction of the judge and power to order a recount, sufficiency of parties and the lack of any allegation of fraud, accident and mistake in the affidavit.

At the time of the hearing the judge made an order, which reads as follows:

"NOW THEREFORE, after a consideration of the pleadings, statements of parties and counsel, I hereby ORDER a recount of the primary ballots cast for the office of State Senator in all towns in Bennington County, to be made by the Board of Civil Authority of each town, said recount to be presided over by the Town Clerks of the respective towns, the recount to be held in the individual towns on or before the 25th day of September 1948, and at said recount a repre-

> sentative of James B. Gibney shall be entitled to be present and a representative of Melford B. Bibens shall be entitled to be present, said representative, if desired, to be designated by the respective parties, and the result of such recount shall be forthwith certified by the TOWN CLERK of each town to the County Clerk within and for the County of Bennington."

This order was duly served on the town clerks of all of the towns. In pursuance of the order all of the towns in the county caused a recount of the votes to be made for the office of state senator and caused their certificates showing the result of the vote on the recount to be sent to the county clerk. The official canvass of the votes on the recount as so certified showed that Howe had received 2651, Bibens 1928 and Gibney 1960. At the recount held in the towns of Bennington and Rupert, Bibens appeared by his representative who took part in the recount and in each instance did not make any objections to it.

After the above order was issued, Bibens brought a petition for a writ of certiorari, setting forth various facts relating to the primary election, the result of the vote for county senators as originally given, the affidavit of Gibney and the order of Judge Cushing. It was stated in the petition that the petitioner believed that the order was erroneous on the following grounds:

> "1. That the laws of the State of Vermont and particularly Vermont Statutes, Revision of 1947, do not give jurisdiction to a Superior Judge or Supreme Court Justice to order a recount of the votes in contesting a primary election nomination.
>
> 2. That there were no allegations in the Affidavit of the said James B. Gibney to justify the issuing of an order for a recount of the votes.
>
> 3. That the affidavit and order for hearing did not bring in the proper parties to make any order on an affidavit to contest a nomination at a primary election.

4. That the order in question was issued without a proper hearing;

5. That no evidence was introduced to show that the ballots in the Towns of Bennington County, or any of them had been preserved carefully, were still available, or had been kept so that such ballots could not be tampered with;

6. That if the Superior Judge had the power and authority to order a recount such recount should have been ordered to be under the supervision and direction of such Superior Judge."

The citation attached to the petition was signed September 24, 1948.

On September 30, 1948, Bibens brought a petition for a writ of prohibition. In this petition the same matters were set forth as in the petition for a writ of certiorari and to which we have already referred. The same grounds for the claim that the order of Judge Cushing is erroneous are set forth in this latter petition as were advanced in the former petition. In addition to what was set forth in the petition for the writ of certiorari the following paragraphs appearing in the petition for a writ of prohibition were included in the agreed statement of facts:

"That your petitioner is informed and believes that the Honorable Stephen S. Cushing has ordered your petitioner to appear before him on the 1st day of October, 1948, at the County Court House in Bennington, Vermont, wherein further proceedings will be held in connection with said affidavit and petition of James B. Gibney.

That your petitioner believes that on said hearings, the said Honorable Stephen S. Cushing will make some further order in this matter directing the canvassing board to make a change in the number of votes for the respective candidates for the office of County Senator from Bennington County and for the County Clerk to issue a certificate of nomination to James B. Gibney."

It further appears in the agreed statement of facts that Judge Cushing intended to have a hearing on the first day of October, 1948, in connection with his order for the petitioner to appear on that date, at which time evidence was to be introduced relative to the issues involved.

The order as amended contained in the petition for a writ of prohibition stayed all proceedings under the order issued by Judge Cushing and restrained the Bennington county clerk from placing on the ballot the names of both Bibens and Gibney as candidates for the office of state senator, all until further order of this Court.

Sec. 210 of the Vermont Statutes, Revision of 1947, is as follows:

> *"Contesting nomination.* A candidate at the primary who desires to contest the nomination of another candidate for the same office at such primary may make affidavit to a justice of the supreme court or a superior judge within five days after a completion of a canvass by the canvassing board, and such justice or judge shall order the candidate whose nomination is so contested to appear and to abide by such order as may be made."

■ The first question to be decided is the claim of the petitionee that the petition for the writ of certiorari was brought prematurely as there is no final judgment to be reviewed. This claim must be sustained. The use of this writ is confined to the review of final judgments or decrees. *Leonard* v. *Willcox,* 101 Vt 195, 203, 142 A 162; *Sowles* v. *Bailey,* 69 Vt 277, 285, 37 A 751. So if we assume, without so deciding, that the order referred to in Sec. 210, supra, could properly be said to be a judgment upon which this writ could be founded, the order complained of here is not the final order to be made in the matter as it appears that Judge Cushing intended to have a hearing in connection with the order.

We come then to a consideration of the grounds set forth in the petition for a writ of prohibition as a basis for the claim that the order in question was erroneous.

These grounds numbering six have already been set forth. Passing over the question of whether the grounds numbered two to

five inclusive are proper grounds on which to base a petition for such a writ, we will first turn our attention to them.

■ No. 2 relates to the claim of lack of sufficient allegations in the affidavit to justify the issuance of the order in question. In our opinion the allegations in the affidavit set forth facts which tended to support the claim of the affidavit that a mistake in the count had been made. The proceeding under Sec. 210, *supra,* is informal. It is not to be expected or required that all the strict rules of pleading will be observed. It is sufficient in order to justify the justice or the judge to act under the statute that the allegations show reasonable grounds for so acting. In our opinion that is the case here. The case of *State ex rel Ballard* v. *Greene,* 87 Vt 515, 89 A 743, relied on by the petitioner is distinguishable. In that case the strict rules of pleading applied and the allegations were all general in nature, while in the present case there are allegations of specific facts.

Ground number 3 is to the effect that the proper parties were not brought in to warrant the making of the order on the affidavit. The only party required by Sec. 210, supra, to be ordered to appear by the justice or judge after receipt of the affidavit is the candidate whose nomination is being contested. It appears in the agreed statement of facts that Bibens, such contestant in the present case, was notified to appear for a hearing in the matter and that he did so appear. Thus the statutory requirement in this respect was fully complied with.

Ground number 4 is that the order in question was issued without a proper hearing. It appears from the agreed statement of facts that the petitioner took part in the hearing and made no objections to lack of service or proper hearing but did object to the jurisdiction of the judge and power to order a recount, sufficiency of parties and lack of any allegation of fraud, accident and mistake in the affidavit. The questions raised by these objections are all ones of law herein decided on the record. There is no dispute on the facts involved therein.

Ground number 5 is to the effect that no evidence was introduced at the hearing to show that the ballots cast in the various towns in the county had been carefully preserved, were still available or had been kept so that they could not be tampered with.

By Sec. 314 of the Vermont Statutes, Revision of 1947, it is

provided that forthwith after a general election the presiding officer shall deliver to the town clerk the votes cast for county and other designated officers and that the clerk shall keep the same, together with the record of rejection of ballots returned to him by the board of civil authority, securely sealed for twenty-three months after such election.

Sec. 189 of the above revision provides that the statutory provisions as to holding elections, counting and preserving the ballots and making returns thereof, and all other kindred subjects, "shall apply to all primaries in as far as they are consistent with this chapter, it being the intent of this chapter to place the primary under the regulation and protection of the laws relating to general elections."

The law presumes that all officers entrusted with the duty of keeping public or official papers will perform their duty by keeping them safely. *White* v. *Hall,* 91 Vt 57, 63, 99 A 274; *Clement* v. *Graham,* 78 Vt 290, 307, 63 A 146, Ann Cas 1913E 1208. This presumption, while not to be taken as evidence of the fact, did take the place of evidence until and unless sufficient rebutting evidence was introduced. *Tyrrell* v. *Prudential Ins. Co.,* 109 Vt 6, 23, 192 A 184, 115 ALR 392.

We now come to grounds 1 and 6 which state in effect that Sec. 210, supra, gives the justice or judge no jurisdiction to order a recount and if power or authority is thereby conferred the recount must be under the supervision and direction of the justice or judge. In short, these grounds challenge the validity of the order made by Judge Cushing and thus go to the very heart of the case.

Sec. 210 does not provide for any special kind of order. It clearly gives the justice or judge broad discretionary powers in that respect. By Sec. 153 of the Revision of 1947 it is provided that the provisions of Ch. 13, which has to do with primary elections, shall be liberally construed, so that the real will of the voters shall not be defeated. The order to be made under Sec. 210 should be such an order as will result in ascertaining the real will of the voters, or, in other words, in determining which of the contesting candidates is entitled to the nomination.

It is clear that the statute conferred jurisdiction on Judge Cushing to make an order after receipt of the affidavit. He had jurisdiction of the subject matter and of the parties. The only question

is, then, whether he exceeded his jurisdiction in making the kind of order that was made. In considering this question attention must be given to the practical situation with which he was faced. It was necessary that the matter be speedily determined in order that the proper candidate's name be placed on the printed ballot. Mistake in·the count in four specified towns was alleged and it was also alleged that mistakes had been made in the vote in the remaining towns in the county, 12 in number. Faced with this situation, was the order as made so unreasonable, so lacking of any sound or reasonable basis for ascertaining the correct vote of Bibens and Gibney, that there was an abuse of discretion on the part of the judge in making the order in question? This is the test to be applied in determining whether he had the power and authority to make the order or whether he exceeded the jurisdiction conferred on him by the statute in adopting the procedure that he did adopt.

The petitioner says that Judge Cushing had no authority under the statute to order a recount by the election officials in the various towns and at the most he had authority to order a judicial count, i.e. a count under his supervision and authority. The petitioner cites several authorities which he says support the first of the above claims. The one on which he seems to rely mainly is the case of *Rosenthal* v. *State Canvassers,* 50 Kan. 129. That case was a writ of mandamus brought to compel a board of canvassers to hold a recount. That court held that as the board had performed its duty and had adjourned, it became, as a body, *functus officio,* officially dead, and could not be brought back to life by an order of the court. But the holding in that case does not apply here. In the present case, Judge Cushing was proceeding under a statute, the purpose of which, as we have already pointed out, is to ascertain who is the legally nominated candidate as between contestants for the office. If the rule set forth in the Rosenthal case were to be adopted in the present case an absurd result might very well be reached. It might well happen that an order would be made to which no procedural or other fault could be found and that in carrying out the order it was ascertained that a mistake, beyond question, had been made. If the mistake could not be corrected because the proper election officials could not be ordered to correct the result of the vote as certified by them because, as a body, they had become *functus officio,* then the very purpose of

Sec. 210 would be thwarted. The statute would become ineffective and useless. Construction of a statute which would render it ineffective and a construction which would lead to absurd consequences must always be avoided if possible. *Menut & Parks Co.* v. *St. Johnsbury,* 114 Vt 41, 45, 39 A2d 342, 156 ALR 404; *In re Swanton Market Area,* 112 Vt 285, 292, 23 A2d 536.

The petitioner also insists that Judge Cushing had no authority to order the ballots produced. In support of this claim he relies on Sec. 314 of the 1947 Revision and on *In re Post,* 111 Vt 444, 17 A2d 326. Sec. 314 has to do with the preservation of votes cast at a general election, as has already been pointed out. It also provides that they must be produced by the town clerk in whose custody they have been placed when ordered by the senate, house of representatives or general assembly for a certain purpose or when by a county court in specified instances. In the Post case it was held in construing P. L. Sec. 276, the same in all material respects as Sec. 314, supra, that the votes could only be delivered to the persons or bodies specified in the statute.

Sec. 189 of the 1947 Revision, as we have seen, provides that the statutes relating to general elections, including those having to do with counting and preserving the ballots, shall apply to all primaries insofar as they are consistent with Chap. 13, which is the chapter of the revision relating to primary elections. The petitioner says that this section, taken in connection with Sec. 314 and the holding in the Post case, deprived Judge Cushing of any authority to order the votes to be produced for a recount. But Sec. 210, supra, is a part of Ch. 13, supra. If the provisions of Sec. 314 can be invoked here so as to make it impossible for a recount to be had, the very purpose of Sec. 210, as heretofore set forth, would be defeated. Thus it is apparent that Sec. 314, so far as it relates to the production of ballots, is inconsistent with Ch. 13 and does not apply to primary elections.

The authorities cited by the petitioner show that pursuant to statutory authority a court has the right to order a recount. Every statute is understood to contain by implication, if it does not by its express terms, all such provisions as are necessary to effectuate its object and purpose and to make effective the rights, powers, privileges and jurisdiction that it grants; and what is implied in a statute is as much a part of it as what is expressed. *In re Roberts,* 111 Vt 91, 93, 10 A2d 1.

■ There is no express statutory authority for a recount of votes for county officers in a primary election. The question is, then, whether Sec. 210 impliedly authorizes it in order to effectuate the object and purpose of the statute which has heretofore been stated. The two reasons in opposition to the order for a recount advanced by the petitioner, if they had been held valid, would indicate strongly, if not conclusively, that this method of carrying out the purpose of the statute was not therein authorized. But as we have decided that these are not valid reasons for holding the recount to be unauthorized it remains to be seen whether this method of effectuating the object and purpose of the statute·is so lacking of any sound or reasonable basis that we can say, as a matter of law, that Judge Cushing abused his discretion and thus exceeded the jurisdiction conferred on him by Sec. 210 in making the order for a recount.' In view of all the facts, circumstances and legal principles herein set forth we cannot say, as a matter of law, that there was an abuse of discretion and an exceeding of his jurisdiction by the judge.

■ It remains to be seen whether the recount in order to have been a valid method of carrying out the purpose of the statute must have been under the personal supervision or direction of Judge Cushing, which method of holding a recount the petitioner calls "a judicial count". In our opinion it was not necessary for the judge personally to supervise or direct the recount of the votes in order to make valid the method he chose for carrying out the purpose of Sec. 210. Whether he could, in view of the time element involved, and the number of towns in which a recount was to be held, have devised some way which would have enabled him personally to supervise it, it is unnecessary to determine. He retained the right to control and direct the recount as it appears from the agreed statement of facts that he intended to have a hearing, at which evidence was to be introduced relative to the issues involved in the matter, and that is all he was required to do in order to have a valid recount. *Seglie* v. *Ackerman,* 90 NJL 118, 100 A 850.

*The petition for a writ of certiorari is dismissed, without costs. The petition for a writ of prohibition is dismissed without costs. The restraining orders issued against the Honorable Stephen S. Cushing, superior Judge and against George H. Plumb, Esq., Clerk in and for Bennington county are vacated, without costs.*