# State of Vermont v. Leonard Forte

[624 A.2d 352]

No. 91-061

Present: Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.

Opinion Filed January 29, 1993

*Jeffrey L. Amestoy*, Attorney General, and *David Tartter*, Assistant Attorney General, Montpelier, for Plaintiff-Appellee.

*Alan P. Biederman* of *Biederman & Rakow, P.C.*, Rutland, for Defendant-Appellant.

**Dooley, J.** In this extraordinary relief proceeding, the Bennington Superior Court granted a writ of certiorari to set aside an order of the Vermont District Court, Bennington Circuit, granting defendant a new trial in a criminal case. Defendant appeals, arguing that relief by way of certiorari is unavailable in this proceeding, that the court applied the wrong standard in granting the writ, and that the superior court was in error in its interpretation of the new trial decision of the district court. We agree that the superior court erred in granting relief based on its findings and remand for further findings and conclusions.

Defendant Leonard Forte was charged, under 13 V.S.A. § 3252, with three counts of criminal sexual assault of a minor for allegedly assaulting his daughter's twelve-year-old female friend. The incidents in question occurred on three nights in February of 1987, when defendant, his daughter and her friend were staying at his vacation home in Landgrove. After a trial in December of 1988, the jury returned a verdict of guilty on each of the three counts. Defendant then moved for a new trial and a judgment of acquittal on a number of grounds, including the "emotional involvement" of the deputy state's attorney who prosecuted the case.

The post-trial motions were heard in June of 1989. On October 14, 1989, the court denied the motion for acquittal but granted the motion for a new trial. It found that the emotional involvement of the prosecutor, which was manifested in various ways, deprived defendant of a fair trial. On November 3, 1989, the State sought extraordinary relief in the Supreme Court, al-

leging that the trial judge had abused his discretion and requesting that the order for a new trial be set aside. This Court dismissed the petition "without prejudice to bringing a petition for extraordinary relief in superior court." *State v. Forte,* 154 Vt. 46, 50, 572 A.2d 941, 943 (1990) (*Forte I*). The State brought such a proceeding in the Bennington Superior Court in May of 1990.

The case was heard in November of 1990. The record consisted of the testimony of each of the jurors, both prosecutors, and the court reporter. It also included the decision of the district court granting a new trial and the transcript of proceedings in the criminal case. This transcript consisted of the pretrial hearings and the trial up to the time the court reporter left the court and the tape of proceedings thereafter.

The superior court examined the State's complaint and decided that it requested relief in the nature of certiorari. Based on that conclusion, the court determined that it was required to adjudicate the matter solely on the basis of the official record made in the district court. This preliminary decision led the superior court to refuse to consider the evidence that it took. It made findings, however, based on part of that testimony in the event of appeal to this Court.

Based solely on the record of the district court proceedings, the superior court set aside the new trial decision of the district court. The superior court reasoned that the district court granted a new trial based on the cumulative impact of two actions of the prosecutor: (1) the introduction of the personal beliefs of the prosecutor into closing argument, and (2) the emotional involvement of the prosecutor in trial examination and argument. The superior court concluded that the latter ground could not be reviewed because it was based on the observations of the trial judge, but the former ground could be reviewed from the record. Based on that review, the court concluded that the prosecutor never injected her personal beliefs into her closing argument. Because one of the grounds supporting the new trial decision was not present, the superior court struck the grant of a new trial.

Defendant attacks the superior court's characterization of the district court's decision, as well as its finding of error. His main challenge, however, is to the superior court's approach. He

argues that our original decision narrowed the issue to whether there was bias or improper motivation in the district judge in granting the new trial. In his view, the superior court could make this determination only by considering the testimony given before it, exactly what that court refused to do. In the absence of a finding of bias or improper motivation, he argues, the superior court's order cannot be sustained.

It is helpful at the outset to summarize our earlier decision in this case. Although the rationale for that decision was that the State is required to seek extraordinary relief, in the first instance, in the superior court, we did provide some guidance about the nature of the proceeding. First, we did not reject the proposition that, upon some showing that could not be described "with precision," extraordinary relief might be available to set aside the decision to grant a new trial. *Forte I*, 154 Vt. at 47–48, 572 A.2d at 941–42. Second, we noted that any review would be "narrow," and that extraordinary relief must be based on usurpation of judicial power, arbitrary abuse of power, or clear abuse of discretion. *Id.* at 48, 572 A.2d at 942. Third, we emphasized that review would be difficult, if not impossible, on the record alone because the new trial decision was based on the trial judge's observations of the demeanor of the participants and the reactions of the jurors. *Id.* at 49, 572 A.2d at 942.

It is also helpful to summarize the status of extraordinary relief in Vermont. Pursuant to statute, this Court and the superior courts have concurrent jurisdiction over "proceedings in certiorari, mandamus, prohibition and quo warranto." 4 V.S.A. §§ 2, 113. These writs, however, were abolished by the Vermont Rules of Civil Procedure. V.R.C.P. 81(b). Much of the relief available under these writs is now covered by Rules of Civil Procedure 74 and 75 on review of governmental action. To the extent it is not provided by the Rules, however, relief formerly available under these writs is available in a normal civil action for extraordinary relief. See Reporter's Notes to V.R.C.P. 81; *Pfeil v. Rutland District Court*, 147 Vt. 305, 308, 515 A.2d 1052, 1054–55 (1986). In determining the scope of such a proceeding, we look to the contours of the writs that have been replaced with extraordinary relief. See *Bloomer v. Cheney*, 131 Vt. 552, 553, 311 A.2d 101, 102 (1973) (rule does not "purport to change the nature of the actions").

■ The superior court concluded that the appropriate extraordinary relief was in the nature of certiorari and that, because such relief could be granted based solely on the record in the district court, it could not rely on the testimony it heard. We do not concur in this analysis for two reasons. The purpose of certiorari is to review judicial action of inferior courts and tribunals in regard to substantial questions of law affecting the merits of the case. See *Burroughs v. West Windsor Board of School Directors*, 141 Vt. 234, 237, 446 A.2d 377, 379 (1982). It is used "only in those cases in which compelling public necessity or other unusual circumstances make ordinary modes of proceeding inadequate, and the review thus occasioned is limited to keeping the inferior tribunal within the limits of its jurisdiction and insuring that that jurisdiction is exercised with regularity." *Rhodes v. Town of Woodstock*, 132 Vt. 323, 324–25, 318 A.2d 170, 171 (1974). It is not, however, ordinarily a means of interlocutory relief; thus, it requires a final judgment. See *In re Bibens*, 115 Vt. 383, 388, 61 A.2d 598, 601–02 (1948); *Sowles v. Bailey*, 69 Vt. 277, 285, 37 A. 751, 754 (1897).[1] There is no final judgment in this case, and review by certiorari is inappropriate.

■ Second, although certiorari review in Vermont brings up the record for correction or revision in matters of law, see *Rhodes*, 132 Vt. at 324, 318 A.2d at 171, review is not limited to the record before the tribunal whose action is being reviewed.[2]

---

[1] An exception developed in cases where there had been no final judgment, if the issue on review had been finally determined and it "did not touch the merits." *Carpenter v. Central Vermont Ry.*, 84 Vt. 538, 539, 80 A. 657, 657 (1911); see also *Emrick v. Connarn*, 128 Vt. 202, 205, 260 A.2d 380, 382–83 (1969) (quoting *Carpenter*). That exception does not apply here because the order under review involves the merits of the criminal case.

[2] Much of the confusion here probably relates to the use of the term "record." The superior court treated that term as meaning the official file in the criminal case together with the transcript of the trial and other events. As early certiorari decisions of this Court have noted, however, transcripts are frequently unavailable, especially with respect to the quasi-judicial proceedings that are often the subject of certiorari review. See, e.g., *Rutter v. Burke*, 89 Vt. 14, 31, 93 A. 842, 850 (1915). In such cases, the substance of the actions for which review is sought must be established by evidence. The State sought exactly that kind of review in this case. Its allegations involved actions that occurred in the district court, although not all of them were shown fully by the transcript or the case file.

See *Chapin Hill Estates, Inc. v. Town of Stowe*, 131 Vt. 10, 13, 298 A.2d 815, 817 (1972). The reviewing court may take testimony related to the review. See *id.*; *Sowles*, 69 Vt. at 279–80, 37 A. at 752.

If extraordinary relief is available at all in these circumstances, it is in the nature of mandamus.[3] The purpose of mandamus is to enforce "'a simple and definite duty, imposed by law, and arising under conditions admitted or proved to exist.'" *Bargman v. Brewer*, 142 Vt. 367, 369–70, 454 A.2d 1253, 1255 (1983) (quoting Black's Law Dictionary 899 (5th ed. 1979)). Ordinarily, it is not available with respect to judicial acts that involve judgment or discretion. *Id.* There is an exception, however, where there is an "arbitrary abuse of the power vested by law" amounting to "a virtual refusal to act or to perform a duty imposed by law." *Couture v. Selectmen of Berkshire*, 121 Vt. 359, 361, 159 A.2d 78, 80 (1960).

We have no doubt that mandamus, as it originally was applied in this state, would preclude the relief the State sought here. Although the district court had a duty to impose sentence based on the jury's guilty verdict "without unreasonable delay," V.R.Cr.P. 32(a), it had the power to order a new trial where "required in the interests of justice," V.R.Cr.P. 33, and the exercise of that power involved discretion and judgment. See *State v. Briggs*, 152 Vt. 531, 542, 568 A.2d 779, 785 (1989) (because disposition of new trial motion is "within the court's discretion, its decision will not be reversed unless defendant shows that this discretion was either withheld or abused"). One of our earliest mandamus cases involved an attempt to have this Court order the county court not to grant new fact-finding by auditors in a civil case, the equivalent of a new trial. This Court held that such use of mandamus was inappropriate because the decision whether to accept or reject the report of the auditors involved discretion. *Richards, Truesdell & Co. v. Wheeler*, 2 Aik. 369, 372 (1827).

---

[3] The superior court concluded that mandamus was not appropriate because the State was not requesting the performance of a duty. The State is seeking that the district court impose sentence and issue a judgment in accordance with the verdict of the jury. The duty to perform these acts is sufficiently clear if the court cannot grant a new trial. Mandamus is not inappropriate because of the absence of a duty.

We have liberalized the use of mandamus, however, to reach extreme abuses of discretion. This is consistent with the policy that extraordinary relief provides "a flexible procedure aimed at providing litigants an avenue for relief when other avenues are foreclosed." *Crabbe v. Veve Associates*, 145 Vt. 641, 643, 497 A.2d 366, 368 (1985). Recently, we granted mandamus relief directing the superior court to close discovery in a civil suit, despite the broad discretion we give to trial courts to supervise discovery. *Chrysler Corp. v. Makovec*, 157 Vt. 84, 91, 596 A.2d 1284, 1288–89 (1991). We held that relief was available "where judicial power is usurped or the court clearly abuses its discretion," a standard we found was met because of the oppressive and unreasonable discovery that had been allowed. *Id.* at 88–89, 596 A.2d at 1287; see also *Ley v. Dall*, 150 Vt. 383, 386, 553 A.2d 562, 563–64 (1988) (reviewing prior mandamus cases and deriving standard of review from those and from *Schlagenhauf v. Holder*, 379 U.S. 104, 110 (1964)).

We have also used mandamus to allow the State to obtain review of a sentencing order where it had no remedy by way of appeal. See *State v. Saari*, 152 Vt. 510, 514, 568 A.2d 344, 347 (1989). In that case, the district court refused to follow a statute providing a mandatory minimum sentence for the offense involved, and we held that such a "'usurpation of power'" warranted extraordinary relief. *Id.* (quoting *Will v. United States*, 389 U.S. 90, 95 (1967)).

We note that other jurisdictions have recognized at least the possibility that liberalized mandamus can be used to review the grant of a new trial in a criminal case, although these cases rarely find that the extraordinary circumstances needed for relief are present. The leading case in the federal courts is *In re United States*, 565 F.2d 173, 179 (1st Cir. 1977), where the Court of Appeals for the First Circuit issued a writ of mandamus to vacate a district court grant of a new trial. The court reasoned that "[t]he action of the trial judge was not merely an error of judgment within the wide range of discretion authorized by Rule 33 . . . . Under no interpretation of the evidence presented here could any of the standards for granting a new trial be said to have been met." The court emphasized that it was not departing "from our previous statements that only the rarest of circumstances merit intervention by mandamus." *Id.* The decision

has received mixed reviews in the other circuits. See *Nilson Van & Storage Co. v. Marsh*, 755 F.2d 362, 366 (4th Cir. 1985) ("an unjustified post-verdict grant of a new trial could be redressed by the government by a petition for a writ of mandamus"); *United States v. Draper*, 746 F.2d 662, 664 (10th Cir. 1984) ("it has been generally held that mandamus cannot be used by the government to obtain review of an order of a district court granting a new trial"); *United States v. Dior*, 671 F.2d 351, 357 (9th Cir. 1982) (mandamus unavailable); *In re United States*, 598 F.2d 233, 238 (D.C. Cir. 1979) (distinguishes First Circuit decision "[w]ithout inquiring whether that case was rightly decided").

We have found only one state court decision where mandamus has been used to vacate the grant of a new trial. See *Ex parte Nice*, 407 So. 2d 874, 882 (Ala. 1981) (5-to-4 decision). That decision states that "only the rarest of circumstances merit an intervention in a criminal case by mandamus." *Id.* at 880. Other decisions have recognized the theoretical availability of mandamus but have refused to allow the writ on the facts involved. See *State ex rel. Marsland v. Shintaku*, 640 P.2d 289, 294 (Haw. 1982) (mandamus would be issued only on "a flagrant and manifest abuse of discretion"); *In re Writ of Prohibition*, 539 A.2d 664, 688 (Md. 1988) (adopts from *Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980), the view that the proper approach is "What never? Well, hardly ever!"). It is fair to say from the decisions of other jurisdictions that only the most extraordinary circumstances have warranted the use of mandamus to vacate the award of a new trial in a criminal case. We concur in their expression of a very narrow standard of review, as narrow as any in our law.

If mandamus is available, it is an independent action that does not bring the record of the proceeding involved into the reviewing court. See *Paine v. Town of Leicester*, 22 Vt. 44, 47 (1849). The pleading and proof occurs as in other civil cases. See *Clement v. Graham*, 78 Vt. 290, 305, 63 A. 146, 150 (1906). The evidence offered in this case can be considered in a mandamus action.

Although our earlier decision in this case did not detail the nature of the extraordinary relief involved or the procedure in

determining this case, there is no doubt that it contemplated the use of mandamus standards. It stated that relief would have to be based on usurpation of judicial power, clear abuse of discretion or arbitrary use of power, *Forte I*, 154 Vt. at 48, 572 A.2d at 942, and that the State could offer evidence in support of its claims. *Id.* at 50, 572 A.2d at 943.

Although we do not accept the superior court's analysis of the source and nature of its power, this does not necessarily mean that its ultimate conclusion must be reversed. None of the evidence it refused to consider was of benefit to defendant. Even though it approached the question through certiorari, the court held that the standard of review was "clear and serious abuse of discretion," language similar to that which we have used in the mandamus cases. If the superior court's conclusions are supported by the record, its order can be affirmed.

Defendant argues that the court's conclusions are not supported because (1) *Forte I* required the superior court to find bias or improper motivation on the part of the district court judge, (2) the conclusions are based on a mischaracterization of the opinion of the district court, and (3) they do not show a clear abuse of discretion. On the second point, defendant argues that the district court found that each of the two grounds for a new trial — the expression of personal opinion by the prosecutor in closing argument and the emotional involvement of the prosecutor during the trial — was itself sufficient to warrant a new trial. Thus, he argues that the superior court's conclusion that either of these grounds was a clear abuse of discretion does not alone warrant striking the new trial order. The State counters that bias or improper motivation is not required and the superior court was correct in its interpretation of the district court order as resting on the cumulative effect of the two grounds. Thus, the State argues that the conclusion that one ground was erroneous means that the new trial order must be reversed.

■ We do not agree that *Forte I* required a finding of bias or improper motivation. The sentence from that opinion that defendant quotes is a summary of the State's argument, not an expression of the requirements for relief. We see nothing in our cases, or those from other jurisdictions, that requires a showing of improper motivation to obtain mandamus relief.

We agree with defendant that the district court order is at least ambiguous as to whether it rests on the cumulative effect of the two aspects of prosecutorial misconduct found by the court. There is language to support either view, and the district court never stated explicitly that the absence of one of the grounds would mean that defendant should not receive a new trial. We do not believe that this is the kind of unusual circumstance that warrants mandamus relief. A mandamus case "must be clearly proved." *Parker v. Anderson*, 112 Vt. 371, 376, 25 A.2d 41, 43 (1942). However we might resolve the ambiguity in the district court opinion, we cannot say the case is clear. If we were to affirm the superior court decision on its reasoning, there would be no difference between normal appellate review and mandamus.

Anticipating this difficulty, the State argues that the superior court order can be affirmed on the basis of the evidence that was before it and the facts it found based on that evidence, even though this evidence was not used in reaching its decision. It asserts that these facts show overwhelmingly that the emotional involvement of the prosecutor, if it existed at all, did not taint the trial and make it unfair to defendant. The State urges that we should affirm the superior court's order because it reaches the right result, albeit for the wrong reason.

Certainly, the analysis of the district court record is entirely supportive of the State's position. As emphasized by the superior court, there was extraordinary delay in hearing the motion for a new trial — six months after trial — so that the decision was issued over ten months after the trial. The district judge stated that during pretrial proceedings he cautioned the prosecutor "several times" about "becoming overly emotionally involved"; the superior court found no such cautions in the record. The district judge stated that on "more than one occasion of record" he recommended that someone else be assigned to try the State's case because of the apparent and intense emotional involvement of the prosecutor; the superior court found no such recommendations in the pretrial record, but did find such recommendations in the record on the fifth and seventh day of the trial. The district judge stated that he "repeatedly cautioned the prosecutor to slow down her delivery"; the superior court found two such cautions in the record. The district

judge stated that the prosecutor's cross-examination of defendant's daughter was "unnecessarily vicious and brutal" and reduced her to tears necessitating a recess; the superior court found that the recess was not caused by the cross-examination, and defense objections to the cross-examination were overruled at the time. The district judge stated that when the cross-examination was continued, "the court reporter became so upset that she left the trial in tears and refused to continue"; the superior court found that the reporter left during the cross-examination of defendant and that the district judge said during the motion hearing that his initial reaction was that the reporter had a personal problem. Finally, the superior court found that the tape of the remainder of the trial after the reporter left disclosed no indication of over-emotionalism of the prosecutor.

The superior court concluded, however, that review of a "cold record" is not a substitute for personal observation and concluded that it could not ascertain whether there was over-emotionalism and fury, or resulting prejudice to defendant, from the transcript. Thus, we can affirm the superior court only if its fact-finding from the testimony it heard meets the appropriate standard.

The superior court found that all the jurors described the prosecutor's conduct as professional, and none described her behavior as overly emotional or angry. It found that the court reporter left the trial abruptly during the cross-examination of defendant because "she felt she was going to cry." Her frustration was caused by the prosecutor speaking too quickly and speaking over and interrupting others, to the point where the reporter could not make an accurate record. It found that the reporter described the demeanor of the prosecutor as angry: "something personal appeared to be driving her." It further found that the Bennington County State's Attorney, who was present throughout the trial, did not view the deputy's cross-examination as "either brutal or vicious."

Although these findings suggest that there was no prosecutorial misconduct that impacted on the fairness of the trial, the superior court never drew that conclusion. Moreover, the evidence and findings do not point in only one direction. The testimony of the court reporter indicates that the prosecutor's manner had an effect on the fairness of the trial, and the court

never resolved the conflict between the court reporter's evidence and that of the jurors. Many of the "findings" of the superior court are really recitations of testimony, which we cannot consider as findings of fact. See *State v. Percy*, 149 Vt. 623, 630, 548 A.2d 408, 412 (1988). Most importantly, the superior court made no findings based on the testimony of the deputy state's attorney whose conduct was in issue. Her testimony was the only source of evidence of what occurred off the record, and she disputed each of the statements of the district judge.

We concur with the State that the findings show that this case may involve the rare and extraordinary circumstances that warrant mandamus relief. That is, the evidence may show that it is so clear that the actions of the prosecutor had no effect on the fairness of the trial that it was a gross abuse of discretion to grant a new trial. Until the superior court has fully evaluated the evidence and drawn that conclusion, we are not prepared to affirm the use of extraordinary relief in these circumstances. The order of the superior court must be reversed.

Because the matter must be returned for further proceedings, it is appropriate to specify the scope of those proceedings. There is no need for the court to rehear the evidence, although we do not exclude the possibility that, in the court's discretion, further evidence might be taken. Although it was not an appeal issue, we seriously question the interrogation of the jurors on their reaction to the evidence and court proceedings they observed. See *Bellows Falls Village Corp. v. State Highway Board*, 123 Vt. 408, 412, 190 A.2d 695, 698 (1963) (improper to delve "into the mental processes of the jurors . . . to search out how their verdict was composed"); V.R.E. 606(b) (in an inquiry into the validity of a verdict, juror may not testify to the "effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict . . . or concerning his mental processes in connection therewith"). Further evidence from jurors would not be appropriate.

What is necessary is that the court make thorough and complete findings based on the evidence taken and formulate conclusions from those findings. The court should make findings based on the testimony of the deputy state's attorney whose conduct is in issue. It should restate recitations of testimony into findings of fact and resolve conflicts in the testimony. From

the evidence, it should resolve whether there was over-emotionalism causing prejudice to the rights of defendant and, if not, whether the standard for intervention by mandamus is met.

*Reversed and remanded.*

**Allen, C.J.,** dissenting. It is not the office of mandamus to correct erroneous interlocutory orders that are within a trial court's discretion. *Will v. United States*, 389 U.S. 90, 103–04 (1967). Moreover, mandamus should never be used "to review an interlocutory procedural order in a criminal case which did not have the effect of a dismissal." *Id.* at 98. It is particularly inappropriate to review this fact-specific discretionary determination by way of mandamus. I would reverse.

**Morse, J.,** dissenting. I agree the judgment must be reversed but respectfully do not agree that the case should be remanded.

In *Forte I*, we concluded that the record up to that point was "conspicuously unsupportive of an extraordinary remedy." *State v. Forte*, 154 Vt. 46, 48, 572 A.2d 941, 942 (1990). Nevertheless, we left open the possibility that the record could be appropriately supplemented. We dismissed the petition, "without prejudice to bringing a petition for extraordinary relief in superior court if the State be so advised," with the following observation:

> If, as the State argues, the new trial ruling was "an arbitrary abuse of power," *motivated* by factors not associated with a sound objective assessment of the demeanor of the prosecutor in question and the fairness of the proceeding, we fail to see why this petition was not initiated in superior court, where the trial record could be supplemented by an appropriate evidentiary foundation.

*Id.* at 50, 572 A.2d at 943 (emphasis added).

The sole improper motivation suggested by the record was gender bias.[1] The district court's rationale for its new trial rul-

---

[1] Gender bias is defined as the "'predisposition or tendency to think about and behave toward people mainly on the basis of their sex.'" It refers "not only to discriminatory conduct, but to any conduct or attitude predicated upon predetermined or stereotypical notions about how women and men should

ing, quoted extensively in *Forte I, id.* at 49, 572 A.2d at 942–43, evoked gender discrimination. Its justification for granting a new trial focused on the female prosecutor, who was described as "a fury seldom seen this side of hell,"[2] who "charged" the trial "with emotion." She reduced a female witness to tears with "[a]n unnecessarily vicious and brutal cross-examination," causing the female court reporter, also in tears, to abandon her duties, never to return. The court insinuated she was even responsible for reducing two female jurors "to tears" when the verdict was rendered. Characterizing the conduct of the deputy state's attorney — for example, "the rapidity of her speech and the intensity of her objections" — as "outside the role of prosecutorial propriety," the court held that her "emotional involvement . . . deprived the defendant of a fair trial." *Id.*

Put mildly, the trial court's ruling was a strong attack on a litigator seldom seen in a Vermont courtroom, yet both the superior court and this Court have tiptoed around the only question posed by it. Did the criminal trial judge grant a new trial because the prosecutor overstepped fair bounds or did he do it because he disapproved of her behavior based on stereotypical notions about how women should act?

Though the district court's words raise the issue of gender bias, they do not prove the ruling was motivated by it. Those words could also be a metaphorically overblown statement of a real case of prosecutorial misconduct. In short, *Forte I* posed a simple question: Was the new trial ruling motivated by gender bias?

An extensive record has now been compiled, but we are no further along in answering this question. The superior court did not find any prejudice. Consequently, the petition for extraordinary relief should have been dismissed.

---

or do act." Gender and Justice: Report of the Vermont Task Force on Gender Bias in the Legal System xvi (1991).

[2] See W. Congreve, The Mourning Bride, Act III, scene 8 (1697) ("[H]ell [has no] fury like a woman scorned"); Oxford English Dictionary 287 (2d ed. 1989) (defining a fury as "[o]ne of the avenging deities [in later accounts, three in number: Alecto, Tisiphone, and Megeara], dread goddesses with snakes twined in their hair, sent from Tartarus to avenge wrong and punish crime"; "a ferociously angry or malignant woman").

In initially dismissing the petition for extraordinary relief, this Court stressed the trial judge's unique position in assessing whether justice would be served by granting a new trial: "Even if we were to find scant support in the record for the new trial ruling, we are hard pressed to review what the trial court saw and heard." *Id.* at 49, 572 A.2d at 942. I accept the necessity of a superior court granting extraordinary relief in the rare (I would hope) case where a judge unequivocally exceeds the bounds of fair judgment. Making that determination is in itself a matter of discretion, and I would accord deference to the superior court in making it. But I believe at this juncture a remand is not warranted.

The superior court is asked once again to assess the underpinnings of the new trial ruling. I seriously doubt on remand the superior court will countermand its sentiments, with which I agree, expressed in the decision today being reversed and remanded. The court stated in regard to testimony of various trial participants, including jurors, and the issue of abuse of discretion in granting a new trial:

> We are asked, in essence, to admit evidence of matters not in the record which relate to the exercise of judicial discretion. The State's approach would put this Court in the position of *judging the Judge, or at best second-guessing him.* This type of procedure would lead to disastrous results for the legal system. Litigants dissatisfied with a ruling involving judicial discretion could bring a second action *to test the accuracy of the Judge's observations.* Abuse of discretion, like any error, must be ascertained from the physical record. As a result we decline consideration of the jurors' testimony, or that of the prosecutors and court reporter.
>
> . . . .
> . . . Observation of matters concerning the conduct of trial are solely within the trial court's domain. Decisions concerning the conduct of the trial and the demeanor of the participants are not subject to review absent clear and serious abuse of discretion on the record. . . . [T]he trial court's assessment of the live proceedings before it must prevail. The trial court's assessment is, and in the longer view, should be given greater weight than that of a reviewing court. *Put more plainly, this court can not ascertain*

*whether or not there was over emotionalism and fury or*
*whether demeanor was prejudicial from a transcript.*

(Emphasis added.)

In my opinion, the threshold level for extraordinary relief was not reached for reasons stated in the quoted portion of the superior court's opinion. To grant relief, the evidence must lead to the ineluctable conclusion that no reasonable basis could support the ruling granting a new trial. That the record in this case is insufficient to establish extraordinary relief does not mean that gender bias can never be the basis for overturning a new trial ruling. Another forum is also available to review such misconduct. Allegations of gender bias that are insufficient to support extraordinary relief may warrant sanctions before the judicial conduct board, where the standard of review is not as high as in an action for extraordinary relief. See *In re Hill*, 152 Vt. 548, 562, 568 A.2d 361, 368 (1989) (evidence of judicial misconduct must be clear and convincing).

Even though other observers of the criminal trial did not share the judge's perception of the deputy state's attorney's demeanor, no person is better situated than the district judge to make such an assessment. Indeed, that is why we entrust the governing of the trial to the trial judge. Other trial participants — jurors, attorneys, court reporters — have other functions and other perspectives. It is not their duty to view the trial as a whole, and their testimony on the fairness of the trial is largely irrelevant. The only relevant testimony from these participants would be evidence of prejudice, evidence beyond that shown on the record, for example, unrecorded statements that would support a such a conclusion. The use of extrinsic testimony here went much too far. Jurors were even asked their opinions on whether the prosecutor was so overzealous as to be fairly characterized by the trial judge as "a fury seldom seen this side of hell."

Under the circumstances of this case, it was error to permit jurors to testify against the presiding judge. Cf. *Peterson v. Chichester*, 157 Vt. 548, 552, 600 A.2d 1326, 1329 (1991) (jurors forbidden to testify about deliberative process). Demeanor — including tone of voice, body language, look in the eye, etc. — is hardly an event subject to a swearing contest among trial participants. If trial observers' opinions about the prosecutor's de-

meanor were admissible, then, to be evenhanded, the judge's testimony should also be included. But calling the trial judge to the stand to defend his observations and judgment would be a travesty, and it is no wonder that our rules of evidence flatly prohibit it. V.R.E. 605 (judge may not be witness to matter in which the judge sits). On the other hand, not listening to the judge's side of the controversy in the face of juror criticism of the judge would be an ambush. In short, in such a situation, neither jurors nor judge should be permitted to testify as the other's critic.

Finally, this case was tried in December 1988. The alleged incidents occurred nearly five years ago. The motion for a new trial was granted "in the interests of justice," V.R.Cr.P. 33, the petition for extraordinary relief was granted "in the interests of justice," and presumably this Court is remanding "in the interests of justice." I do not believe "the interests of justice" are being served by the enormous delay caused by the procedural course taken in this case.

*I would reverse.*