## State of Vermont v. Edward T. French, Jr.

[564 A.2d 1058]

No. 86-302

Present: **Allen, C.J., Peck, Gibson, Dooley and Morse, JJ.**

Opinion Filed June 30, 1989

74

*Joel Page*, Lamoille County State's Attorney, Hyde Park, and *Robert Katims*, Department of State's Attorneys, Montpelier, for Plaintiff-Appellee.

*Martin and Paolini*, Barre, for Defendant-Appellant.

**Peck, J.** Defendant appeals his conviction by jury of first degree arson. He raises four issues on appeal: (1) whether his right to a speedy trial was violated, in part due to a mistrial; (2) whether his right to confront his accusers was violated by evidentiary rulings of the trial court; and (3) whether the court properly denied defendant's motion for judgment of acquittal where the verdict depended on the uncorroborated testimony of an accomplice, and (4) whether the judge's charge to the jury on the issue of uncorroborated testimony was adequate. We affirm.

Defendant was promised a $1,000 payment for burning a home on Lake Elmore late at night on September 22, 1981. At the time, defendant was thirty-three years old and living with Dorothy Page, who was eighteen. Page was the only witness who could place the defendant at the lake that night. Defendant discussed the crime with Page before its commission, and threatened her life afterward if she should tell anyone of it. She was in the car with defendant when he drove to Lake Elmore, and she dropped him off there and picked him up after he set the fire.

In November 1982, Page had a son out of wedlock with defendant. In the summer of 1984 she came forward with the details of the crime. It is the defendant's contention that the witness's disclosure was partially or wholly motivated by her desire to keep the defendant from their son. Earlier that year she and defendant had terminated their relationship in a fight, after which defendant was convicted of aggravated assault against her.

Defendant was arraigned on the arson charge on December 3, 1984, in Lamoille District Court, while still serving the sentence on the assault conviction. Witness Page was granted immunity and testified at trial, which commenced on April 3, 1985. That proceeding resulted in a mistrial. An attempt to draw a second jury in July resulted in a change of venue to Chittenden District Court. The second trial, in Chittenden, did not begin until January 29, 1986.

## I.

### Speedy Trial Claim

Defendant's first claim of error is based on the trial court's denial of his motions to dismiss for lack of speedy trial. We hold that the trial court's determination was not an abuse of discretion. See *State v. Roy*, 151 Vt. 17, 36, 557 A.2d 884, 895–96 (1989) (determination of speedy trial violation is within the discretion of the trial judge); *State v. Unwin*, 139 Vt. 186, 195, 424 A.2d 251, 256 (1980), *cert. denied*, 450 U.S. 1033 (1981).

The initial step in our review is to determine how much time passed between defendant's arrest and the date of trial. The length of time, if unreasonable, triggers further inquiry. *State v. Yudichak*, 151 Vt. 400, 405, 561 A.2d 407, 411 (1989).

Here the tally is complicated by a mistrial. Defendant would have us consider the entire period from the date the information against defendant was filed to the date of the second trial. He claims that the delay exceeds the ninety-day limit, applicable by Administrative Order of this Court where defendant is in custody. A.O. 5, § 2. See *State v. Trombly*, 148 Vt. 293, 299, 532 A.2d 963, 967 (1987), *cert. denied*, 486 U.S. 1029, 108 S. Ct. 2009 (1988). We agree that the delay exceeded the limit of Administrative Order 5, § 2. We do not find, however, that the delay warrants reversal. See *State v. Roy*, 151 Vt. at 36, 557 A.2d at 896 (A.O. 5 permits but does not require dismissal of case).

■ The effect of a mistrial in the context of a speedy trial claim has not previously been considered by this Court. Keeping in mind that potential violations must be reviewed on an ad hoc basis, see *State v. Roy*, 151 Vt. at 36, 557 A.2d at 895, we will consider the period commencing after the mistrial separately. This practice emulates the federal Speedy Trial Act, which allows for a separate seventy-day period from the date of the mistrial to the new trial. See 18 U.S.C. § 3161(e) (1982) (setting time from mistrial); *id.* at (c)(1) (setting seventy-day period for initial trial). Even excluding the time from the filing of the information to mistrial, however, the remaining period is approximately ten months.

■ Normally, the period from when a defendant files a motion through the trial court's decision on it is also excluded from the tabulation of delay. See A.O. 5, § 4; *State v. Yudichak*, 151 Vt. at 405, 561 A.2d at 410–11; *State v. Trombly*, 148 Vt. at 300, 532 A.2d at 968. Here, two out of these ten months are clearly attributable to defendant's pretrial motions (three motions to dismiss for lack of speedy trial and one motion for interlocutory appeal).

■ Our calculation will not, however, exclude the period during which defendant's initial motion to dismiss was considered. The delay between filing that motion and the court's ruling was four months and three weeks. During this period, the action had been transferred from Lamoille to Chittenden District Courts. Inexplicably, it took two months for the action to appear on the Chittenden docket after change

of venue was granted. After the case was docketed, the trial court took nearly three months to rule on the motion. Therefore, we calculate the delay at approximately eight months, a delay sufficient to trigger further review under the test set out in *Barker v. Wingo*, 407 U.S. 514, 530–32 (1972), and adopted by this Court. See *State v. Unwin*, 139 Vt. at 195, 424 A.2d at 257; see also A.O. 5, § 5 (responsibility of prosecuting attorney to invoke concurrent jurisdiction of another court if condition of the docket will delay proceedings).

The *Barker* test requires us to consider not only the length of delay, but also defendant's assertion of his right to a speedy trial, the prejudice to defendant rendered by the delay, and the reason for the delay. *State v. Unwin*, 139 Vt. at 195, 424 A.2d at 257. In asserting his right, defendant has filed only motions to dismiss, not motions to expedite the trial proceedings. See *State v. Yudichak*, 151 Vt. at 406, 561 A.2d at 411; *State v. Unwin*, 139 Vt. at 196, 424 A.2d at 257 (motion to expedite distinguished from motion to dismiss for lack of speedy trial). At the same time that defendant filed one of his motions to dismiss, he also requested a continuance to review the transcript provided by the State to prepare his case. During the second trial yet another motion to continue was requested and denied. This combination of motions to dismiss and to continue makes defendant's assertion of his right less convincing, and suggests that defendant may have actually benefited from the delay. .

More importantly, defendant's presentation on appeal shows no prejudice to his case, nor does he demonstrate that the delay was a deliberate attempt by the State to prejudice his case. See *State v. Roy*, 151 Vt. at 37, 557 A.2d at 896. Defendant points out that the prejudice to an incarcerated defendant may include anxiety, embarrassment, or deprivation of witnesses for his case, but does not indicate that he has been prejudiced in any of these ways. Cf. *Moore v. Arizona*, 414 U.S. 25, 26 n.1 (1973) (eighteen months after defendant was charged, one of two key witnesses was deported); *Dickey v. Florida*, 398 U.S. 30, 38 (1970) (two of defendant's material witnesses died, one witness disappeared and police records were destroyed during seven years between information and trial). Moreover, the potential for prejudice to defendant's case is minimized here

by the preservation of witness testimony in the depositions and transcript from the first trial.

█ Defendant maintains that, with the exception of his several motions, the delay was entirely the fault of the trial court. He directs us to *State v. Franklin,* where we held that an unexplained delay of some eighteen months was a violation of defendant's right to a speedy trial. 136 Vt. 568, 570–71, 396 A.2d 138, 139–40 (1978). The fact that the delay is unexplained, however, does not automatically render it unconstitutional. While we do not calculate the length of the delay in the present case beyond an approximation, it does not approach the length of the delay in *State v. Franklin.* See also *Dickey v. Florida,* 398 U.S. at 37–38 (seven years' delay and obvious damage to defendant's case did not require a remand for a determination of prejudice). This delay is not so long that it constitutes a "per se" violation of defendant's rights. See *State v. Franklin,* 136 Vt. at 570–71, 396 A.2d at 139.

█ Defendant further argues that the trial court's evaluation of the speedy trial claim was error because it placed the "burden on the defendant to demonstrate his entitlement to relief after a prima facie showing of delay." Defendant would have us use a "shifting burden" analysis, suggested by Justice Brennan's concurrence in *Dickey v. Florida,* 398 U.S. at 56, in which defendant proves delay and the State must prove the delay was necessary or justifiable. We note, however, that in subsequent speedy trial analyses by the United States Supreme Court, the "shifting burden" approach was not adopted. The Court instead used a balancing test. *Barker v. Wingo,* 407 U.S. at 533.[1] We find it unnecessary to adopt Justice Brennan's minority position, which places an increased burden on the State, in order to protect the defendant's rights.[2]

---

[1] But see *Barker v. Wingo,* 407 U.S. at 530 n.30 ("little difference" between Justice Brennan's approach in *Dickey* and that used in *Barker*).

[2] While Justice Brennan's concurrence in *Dickey v. Florida,* relied on by defendant, would not require a showing of prejudice in order for the charges to be dismissed, it would require a demonstration of "the reason for the delay, and ... the length of the delay and its potential for prejudice to interests protected by the speedy-trial safeguard." 398 U.S. at 52. Moreover,

■ Defendant also claims that the trial court failed to adequately consider his third motion to dismiss for violation of speedy trial rights, filed and heard on the day that the second trial commenced. The court's failure to make findings of fact was, defendant argues, an abuse of discretion. We disagree and note that only two months had passed since the trial court ruled, with ample findings, on defendant's initial motion. We will not disturb that ruling for what amounts to a three-week delay, after deducting time for consideration of defendant's motions, especially where defendant failed to demonstrate that prejudice resulted.

## II.

### Confrontation Clause

Defendant next argues that his right to confrontation, guaranteed under the federal and state constitutions, was violated by two evidentiary rulings of the trial court. First, the trial court ruled, on a motion in limine, that witness Page was not subject to cross-examination as to prior conduct (passing bad checks). Second, during trial, the court sustained the prosecution's objection to cross-examination of Page regarding an inconsistent statement in her testimony at the first trial.

■ The threshold question in examining a confrontation clause claim is whether the defendant "was prohibited from engaging in otherwise appropriate cross-examination." *Delaware v. Van Arsdall*, 475 U.S. 673, 680 (1986);[3] see *State v. Patnaude*, 140 Vt. 361, 370, 438 A.2d 402, 405 (1981) (defendant not entitled to weigh his confrontation interest against interests of the State unless the evidence offered passes tests of logical and legal relevancy).

---

Justice Brennan concedes that "it is unlikely that a prosecution must be ended simply because the government has delayed unnecessarily, without the agreement of the accused." *Id.*

[3] We note that the defendant does not distinguish between the rights afforded him by the Sixth Amendment of the United States Constitution and Chapter I, Article 10 of the Vermont Constitution. We have not distinguished between these protections in the past. See *State v. Covell*, 146 Vt. 338, 341, 503 A.2d 542, 544 (1985).

For the purpose of this argument, we assume that evidence of the witness's passing bad checks is relevant and an appropriate means of testing credibility on cross-examination. See 3 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 608[05], at 608–46 (1988). But see *State v. Larose*, 150 Vt. 363, 366–68, 554 A.2d 227, 230–31 (1988) (use of character evidence for lack of truthfulness is limited). Nevertheless, discretion lies in the trial judge to weigh such cross-examination, comparing its probative value and its prejudice to the witness. *State v. Larose*, 150 Vt. at 368, 554 A.2d at 231; *State v. Berard*, 132 Vt. 138, 147, 315 A.2d 501, 508, *cert. denied*, 417 U.S. 950 (1974) (scope of cross-examination for credibility not unlimited); Reporter's Notes, V.R.E. 608 (the rule prevents cross-examination of prejudicial or unnecessarily embarrassing scope). The court's ruling, that inquiry regarding a bad check charge which had been dropped after the amount of the checks had been paid was prejudicial, was within its discretion. See *State v. Teitle*, 117 Vt. 190, 196–97, 90 A.2d 562, 567 (1952) (limitation of defendant's cross-examination of accomplice regarding collateral issues affirmed).

Defendant also sought to cross-examine Page to show inconsistency in her testimony by requiring her to reiterate her statement, recorded during the first trial, that her account of the facts during depositions was "more close to the truth" than her statements made during the trial. Defendant admits that the question was objectionable, but contends that the answer should be admitted because it reiterates testimony on the record, was relevant on the issue of credibility pursuant to V.R.E. 613, and was appropriately used for impeachment.

Again, the trial court's ruling was within its discretion. This approach to impeachment, tantamount to a demand that the witness admit perjury, was more prejudicial than probative. Furthermore, the examination was cumulative, especially in view of the extensive questioning put to the witness regarding the inconsistency of her testimony on the facts. See V.R.E. 403. Therefore, neither line of cross-examination was admissible evidence, nor "appropriate" evidence in the context of *Van Arsdall*, and the trial court's

rulings cannot be considered a violation of defendant's rights under the confrontation clause.

In passing, we note that defense counsel cross-examined the witness on the motivation for her testimony, specifically inquiring into her desire to keep defendant from associating with their son, as well as her immunity from prosecution for arson, and had an opportunity to establish veracity through examination on inconsistencies in the witness's recall of the facts. These inquiries into the witness's veracity meet the requirements of the confrontation clause. See *State v. Raymond*, 148 Vt. 617, 621, 538 A.2d 164, 166 (1987) (defendant must have opportunity to expose facts to the jury from which it can draw inferences relating to the reliability of the witness). The evidentiary rulings are upheld against defendant's constitutional claim.

## III.

### Uncorroborated Accomplice Testimony

In the third and fourth questions presented, defendant claims that the trial court erred by allowing the conviction to stand based upon uncorroborated accomplice testimony, and by failing to instruct the jury on the unreliability of such testimony. Defendant contends that the court should have granted his motion for judgment of acquittal where completely uncorroborated testimony was the only link between the defendant and the crime.[4]

On review of a motion for judgment of acquittal, the sole issue raised is whether the evidence, viewed in the light most favorable to the State, fairly and reasonably tends

---

[4] The State argues that defendant did not make a second motion after all the evidence had been entered and before the verdict was announced, and therefore is precluded from appellate review under *State v. Cole*, 150 Vt. 453, 455, 554 A.2d 253, 254 (1988). We disagree, noting defendant's request on the record that judgment of acquittal be entered notwithstanding the verdict. Our rules of procedure "permit filing of a motion for judgment of acquittal after a verdict of guilty, even though no similar motion was made during the course of trial." *State v. Bressette*, 136 Vt. 315, 317, 388 A.2d 395, 396 (1978); see *State v. Letourneau*, 146 Vt. 366, 369, 503 A.2d 553, 555 (1985); V.R.Cr.P. 29(c). The purpose of the rule is fulfilled where the issue of insufficient evidence is presented to the trial court prior to review on appeal.

to show the defendant's guilt, so that a jury would be justified in finding guilt beyond a reasonable doubt. *State v. McBurney*, 145 Vt. 201, 204, 484 A.2d 926, 928 (1984). Defendant claims that the evidence is insufficient to support his conviction because the only evidence placing him at the scene of the crime is the uncorroborated testimony of a biased accomplice with immunity from prosecution. Defendant suggests that Vermont jurisprudence, which initially followed the English rule favoring inadmissibility of uncorroborated accomplice testimony, see *State v. Annice*, N. Chip. 9 (Vt. 1789), has accidentally strayed from the appropriate rule. The recommended presumption against accomplice testimony merely begs the central question: whether the statement of the accomplice-witness is reliable. Defendant insists that his examination of the accomplice for bias and veracity has demonstrated the weakness of her testimony. By its verdict, the jury has decided otherwise. Determination of the credibility of the witness and the significance of her testimony is for the jury. *State v. Robillard*, 146 Vt. 623, 626, 508 A.2d 709, 711 (1986). We conclude that the jury was justified in finding the defendant guilty beyond a reasonable doubt. The motion for judgment of acquittal was properly denied.

■■ As to defendant's argument with respect to the jury charge on the same issue, it is flawed at the outset because no objection was made at trial, nor was an alternative instruction proffered by the defense. Absent "plain error," the issue is not preserved for appeal. See *State v. Snide*, 151 Vt. 343, 344, 560 A.2d 380, 381 (1989). We have reviewed the instructions as a whole, noting the court's charge to the jury that they evaluate the testimony of each witness for accuracy and credibility, presume the defendant innocent and place the burden of proof on the State. In sum, we find the charge "balanced and fair." *Id.* at 344, 560 A.2d at 381.

*Affirmed.*