## State of Vermont v. Larry Briggs

[568 A.2d 779]

No. 87-193

Present: **Allen, C.J., Peck, Gibson, Dooley and Morse, JJ.**

Opinion Filed September 22, 1989

*Jeffrey L. Amestoy*, Attorney General, and *Susan R. Harritt*, Assistant Attorney General, Montpelier, for Plaintiff-Appellee.

*Carlyle Shepperson* of *Martin & Paolini*, Barre, for Defendant-Appellant.

**Gibson, J.** Defendant appeals a jury conviction of burglary. We affirm.

On October 20, 1985, David Learned returned from a brief out-of-town trip to discover that his home in Montpelier had been burglarized. Missing from the house were a number of firearms, a car, and a safe containing money and jewelry. Investigators discovered a broken window in a second-story bedroom, with a doghouse dragged to a position immediately underneath it. They also found large-sized footprints in the driveway and at the rear of the house.

The victim suspected the involvement of Eleanor Casey, a former girl friend who had lived with him for six months. At the time of the burglary, Ms. Casey was living with defendant in an apartment in Montpelier. When questioned the day after the burglary, Ms. Casey denied any knowledge of it.

Shortly after the burglary, two confidential informants reported to the police that defendant had shown them weapons similar to those stolen from Mr. Learned's house. After a search of Ms. Casey's and defendant's apartment yielded items missing from the victim's house, they were both arrested and charged with receiving stolen property on October 26, 1985.[1]

After she was arrested, the State offered Ms. Casey total immunity from prosecution for the offense in exchange for her truthful testimony as to the burglary, on condition that she take a polygraph examination and provide the police with a sworn written statement. Ms. Casey then stated that she alone had committed the burglary.

---

[1] Defendant later made a motion to suppress the results of the search, which was granted in June of 1986.

On December 4, 1985, defendant attempted to depose Ms. Casey. After invoking her Fifth Amendment right against compulsory self-incrimination, she refused to testify. On January 10, 1986, the State deposed her. At this deposition, the state's attorney offered Ms. Casey use immunity and agreed to dismiss the charges against her without prejudice. Under oath, Ms. Casey testified that not only did she not commit the burglary, but she knew nothing about it.

Three months later, the State again offered Ms. Casey total immunity for any involvement in the burglary of the Learned house. The agreement, which was in writing, provided that upon Ms. Casey's full cooperation in providing "a true and accurate account" regarding the property theft and her taking a polygraph examination, she would be immune from prosecution as to any crime related to the burglary, and would also be immune from prosecution for perjury or false swearing in connection with any of her prior statements regarding the burglary. As with the other offers, Ms. Casey was advised that this offer did not grant her any type of immunity for false swearing or perjury committed in connection with the statements she was to give.

It was after this last offer of immunity that Ms. Casey implicated defendant, herself, and one Aldo Ciampi as having committed the crime. Mr. Ciampi eventually admitted his involvement, corroborating details given by Ms. Casey, and returned some of the stolen property which was still in his possession. On April 25, 1986, the charge of receiving stolen property was dismissed as to defendant, and the information against him was amended to reflect the charge upon which defendant was eventually convicted, burglary.

Prior to trial, defendant made numerous motions to suppress Ms. Casey's testimony on the ground that but for the grant of immunity, she would be an incompetent witness because of the allegedly perjurious testimony given to the police. Defendant's motions were premised on the conflicting nature of Ms. Casey's previous statements as well as a general claim that the immunity offers were unconstitutional. After a hearing, the trial court denied defendant's various motions, finding that Ms.

Casey's conflicting statements did not render her an incompetent witness, since 13 V.S.A. § 2907 prohibits testimony only by a person actually convicted of perjury. Further, the court concluded that the offers and grants of immunity were within the prosecutor's discretion and did not violate any of defendant's due process rights. Both the trial court and this Court denied defendant permission to take an interlocutory appeal.

After several other similar motions by defendant, with similar results, the case went to trial in late January of 1987. The State's witnesses were Ms. Casey and Mr. Ciampi, the burglary victim, and one of the investigating police officers. On January 30, 1987, the jury found defendant guilty. The court denied motions for a judgment of acquittal and a new trial, again made on the grounds that Ms. Casey's testimony was incompetent and perjurious. At the sentencing hearing in April, defendant moved again for a new trial, this time based on newly discovered "evidence," consisting of an anonymous handwritten letter addressed to the presiding judge purporting to exonerate defendant, as well as a letter from Ms. Casey requesting leniency for him. The motion was denied on the ground that the anonymous letter was speculative and unsupported, and that Ms. Casey's letter did not contain new evidence.

On March 10, 1988, after the present appeal had been filed, defendant made a third motion for a new trial. At a hearing held in late April, Ms. Casey testified under oath and without a grant of immunity that her testimony at trial had been untrue, and that the only people involved in the burglary had been herself and Mr. Ciampi. The court once again denied the motion for a new trial.

Defendant's appeal is based on three grounds. First, defendant contends that the offers of immunity to Ms. Casey violated his due process rights and denied him the right to a fair trial in violation of the Fourteenth and Sixth Amendments to the United States Constitution and Chapter I, Article 10 of the Vermont Constitution. Second, he claims the trial court erred in not granting his motion for a judgment of acquittal where the "only evidence linking him to the [crime] was the uncorroborated testimony of an accomplice which lacked reliability." Third, de-

fendant contends that it was erroneous for the trial court to have denied his last motion for a new trial. We address each of these points in turn.

I.

Defendant's first ground for appeal raises the constitutionality of the use of immunity in the preparation for and prosecution of criminal cases by the State. Specifically, defendant contends that the State here manipulated one witness—Ms. Casey—into telling one version of the crime through offering her several grants of immunity. We find his arguments to be overbroad and unconvincing.

■ First, defendant claims that immunity cannot be given twice, since the language in the governing statute, 12 V.S.A. § 1664(a), refers only to "an" agreement.[2] Common sense as well as past experience show the weakness of this contention. Clearly, immunity can attach to statements made at different times even if they relate to the same incident. We have found no case, for example, suggesting that where a conviction is reversed and a retrial is necessary, a previously immunized witness cannot be granted immunity as to testimony in the second trial; nor would such a rule comport with common sense. We will not interpret a statute in a way that would produce an absurd result. *In re Knapp*, 152 Vt. 59, 65, 564 A.2d 1064, 1067 (1989); *In re R.S. Audley, Inc.*, 151 Vt. 513, 517, 562 A.2d 1046, 1049 (1989).

■ This appeal, however, does not even present a case of successive grants of immunity. The first offer of immunity, made immediately after the burglary occurred, never came to fruition, as the witness did not take the required polygraph examination. The second asserted grant of immunity, which occurred at the January 10, 1986 deposition, was aborted when Ms. Casey avowed that she had not committed the burglary and knew nothing about it. Immunity can be granted only insofar as

---

[2] 12 V.S.A. § 1664(a) provides, in part, that "[n]othing in this section shall preclude the attorney general or a state's attorney from entering into an agreement with a witness . . . under which the witness shall not be prosecuted . . . on account of any transaction, matter, or thing concerning which he may testify."

a privilege against self-incrimination exists. *Kastigar v. United States*, 406 U.S. 441, 449 (1972) (the constitutional inquiry is "whether the immunity granted . . . is co-extensive with the scope of the privilege"); *State v. Couture*, 146 Vt. 268, 273, 502 A.2d 846, 850 (1985). At the deposition, Ms. Casey's statement obviously did not subject her to any criminal liability and thus was not the proper subject of a grant of immunity.

Once again, and apparently in the belief that Ms. Casey's previous statements were untrue, the State attempted to gain Ms. Casey's cooperation by granting her immunity in April of 1986. This time, she gave a more complete account, in the process implicating herself, defendant, and one other accomplice in the burglary. Defendant disagrees with this version of Ms. Casey's story, and contends it was untrue, while one of her earlier statements was accurate.

Defendant contends in general that repeated offers of immunity can only produce perjured testimony. In so arguing, he alleges that, in this particular case, the statements made by Ms. Casey after the April 1987 offer of immunity were perjurious, since they conflicted with previous statements she had made when offered immunity. This, he argues, is a prime example of the principle that more than one immunity offer must produce perjury.

Stated simply, defendant argues that the series of immunity offers and grants added up to one conditional grant of immunity, which he defines as " 'plea agreements entered into by the accomplices [that are] so likely to induce perjurious testimony that to allow them . . . would . . . violate . . . due process rights,' " quoting *United States v. Dailey*, 759 F.2d 192, 193 (1st Cir. 1985).

We do not agree, however, that the offers made here constituted an illegal conditional grant of immunity, or were calculated to craft one particular version that would work to the State's advantage. We see no evidence on the record that the State's offers of immunity to Ms. Casey were conditioned on her testifying in any particular manner. Instead, it appears that the State was attempting to elicit an accurate account of the facts surrounding the burglary. Indeed, the interests of both

defendant and the criminal justice system were safeguarded by full disclosure to the jury of the plea agreements, the opportunity for thorough cross-examination, and careful jury instructions as to the accomplice testimony. See *United States v. Dailey*, 759 F.2d at 196 (relying on *Hoffa v. United States*, 385 U.S. 293, 311 (1966)).

Defendant's claims on this appeal are similar to those raised in *State v. Ladabouche*, 146 Vt. 279, 502 A.2d 852 (1985), in which defendant claimed his due process rights had been violated by the prosecutor's knowing use of perjured testimony. In *Ladabouche*, we noted that a conviction obtained through the knowing use of false evidence solicited by the State would violate the Fourteenth Amendment. *Id.* at 281, 502 A.2d at 854 (relying on *Napue v. Illinois*, 360 U.S. 264, 269 (1959)). But there we held that such a claim "must be distinguished from the use of a witness who has made prior inconsistent statements under oath, particularly where the defendant is aware of those statements," because "[p]resentation of a witness who recants or contradicts his prior testimony is not to be confused with eliciting perjury. It [is] for the jury to decide whether or not to credit the witness." *Id.* at 282, 502 A.2d at 855.

In this case, there was no evidence that the State knowingly used perjured testimony. Instead, what it knowingly used was testimony that differed from previous statements made by that particular witness. The distinction is subtle, but significant. Defendant had ample opportunity to impeach her credibility by bringing to the jury's attention the fact that Ms. Casey had made prior inconsistent statements under oath. The jury was also told of the close nature of the relationship between Ms. Casey and defendant, and of the dropping of all charges against her in return for her testimony at trial. They were in the best position to judge which version of her story represented the truth. See *State v. Warner*, 151 Vt. 469, 471, 560 A.2d 385, 387 (1989) (credibility of witnesses, together with weight and persuasiveness of evidence, are questions of fact for jury). That they chose to believe the version unfavorable to defendant does not mean that Ms. Casey's testimony as a whole was so tainted as to be inadmissible or constitutionally infirm.

■ In sum, the offers and ultimate grant of immunity made to Ms. Casey were within the parameters of the state's attorney's discretion under 12 V.S.A. § 1664. See *State v. Hamlin*, 146 Vt. 97, 107, 499 A.2d 45, 52 (1985). Defendant has not shown a constitutional violation of his rights, since the plea agreements with Ms. Casey were before the jury, which had both the obligation and the opportunity to weigh her credibility.

## II.

As his second issue, defendant contends that the trial court erroneously denied defendant's motion for judgment of acquittal "where the only evidence linking him to the [crime] was the uncorroborated testimony of an accomplice which lacked reliability." Defendant alleges that the prosecution thus failed to meet its burden of introducing evidence fairly and reasonably tending to show defendant's guilt, and that his motion should as a result have been granted, citing V.R.Cr.P. 29. We disagree.

In support of this point, defendant addresses the evolution of the common law regarding accomplice testimony from its early origins in English jurisprudence under Henry VIII through its current application in this state. He notes that in the earliest Vermont case on the subject, *State v. Annice*, N. Chip. 9 (Vt. 1789), involving an alleged adulterer, this Court did not allow the unindicted adulterer to testify against the defendant on the principle that "no person shall be allowed to testify his guilt or turpitude to convict another." *Id.* at 9.

■ But Vermont case law on this subject has developed over the past two hundred years, and now not only allows the testimony of an accomplice, but does not require that testimony to be corroborated in order to support a conviction.[3] Most re-

---

[3] In 1859, this Court held in *State v. Howard*, 32 Vt. 380, 403 (1859), that an accomplice's testimony must be corroborated upon points material to the conviction; accord *State v. Potter*, 42 Vt. 495, 506 (1869); *State v. Colby*, 51 Vt. 291, 295 (1878). In *State v. Dana*, 59 Vt. 614, 618, 10 A. 727, 729 (1887), we held to the contrary that "[t]here is no rule of common law nor of the statute law of this State, that a person shall not be convicted on the testimony of an accomplice unless corroborated by other evidence." The rule announced in *Howard* has long since been abandoned, and *Dana* has been followed for the past one hundred years. See, e.g., *State v. Montifoire*, 95

cently, in *State v. French*, 152 Vt. 72, 82, 564 A.2d 1058, 1063 (1989), we held that defendant's "recommended presumption against accomplice testimony merely begs the central question: whether the statement of the accomplice-witness is reliable." We further pointed out, as we have on numerous prior occasions, that such a determination is one for the jury. *Id.* at 82, 564 A.2d at 1063; *State v. Warner*, 151 Vt. at 471, 560 A.2d at 387 ("the credibility of the witnesses, together with the weight and persuasiveness of the evidence, are questions of fact for the jury, whose determination will stand if there is credible evidence supporting it").

■ Although our consideration of defendant's second argument on appeal need go no further, we note that other, corroborating evidence was present in the form of physical evidence at the scene of the crime: large-sized footprints, a doghouse repositioned under the window through which the burglars gained access, and the removal of a safe from the house. In addition, the judge properly charged the jury as to its duty:

> The jury, however, should keep in mind that the testimony of an accomplice is always to be received with caution and considered with great care. You should never convict a defendant upon the unsupported testimony of an alleged accomplice unless you believe the unsupported testimony beyond a reasonable doubt.

Especially in light of this cautionary instruction, we see no reason to disturb the jury's assessment of the witness's credibility in this case.

### III.

Defendant was convicted on January 30, 1987. On March 10, 1988, he moved pursuant to V.R.Cr.P. 33 for a new trial on the ground that Ms. Casey had recanted her trial testimony. After a hearing at which Ms. Casey testified, the trial court denied de-

Vt. 508, 512, 116 A. 77, 79 (1922); *State v. Bissell*, 106 Vt. 80, 90, 170 A. 102, 107 (1934); *State v. Teitle*, 117 Vt. 190, 208, 90 A.2d 562, 574 (1952); *State v. Crepeault*, 126 Vt. 338, 341–42, 229 A.2d 245, 247–48, *cert. denied*, 389 U.S. 915 (1967); *State v. French*, 152 Vt. 72, 82, 564 A.2d 1058, 1063 (1989).

fendant's motion. Defendant contends that the court committed reversible error in so ruling. We disagree.

■ Under the usual standard employed on motions for a new trial based on newly discovered evidence, the evidence must (1) be material; (2) have been discovered subsequent to trial; (3) be such that the result on retrial would probably change; (4) be truly new, and not merely undiscovered through lack of due diligence; and (5) not be merely cumulative or impeaching. *State v. Jewell*, 150 Vt. 281, 285, 552 A.2d 790, 792 (1988); *State v. Potter*, 148 Vt. 53, 63, 529 A.2d 163, 169 (1987); *State v. Mecier*, 145 Vt. 173, 181, 488 A.2d 737, 742 (1984).

In *State v. Robillard*, 146 Vt. 623, 508 A.2d 709 (1986), we confronted a claim remarkably similar to defendant's contention here. There, after defendant had been convicted of driving while under the influence of intoxicating liquor, 23 V.S.A. § 1201(a)(2), the State's main witness recanted his testimony at a hearing on a motion for a new trial. In enunciating a new standard to govern such cases, we refined the traditional five-point test to a three-point analysis, holding that a motion for a new trial based on recanted testimony by a prosecution witness will be granted where:

(1) the court is reasonably well satisfied that the testimony given by a material witness was false;

(2) without the testimony, the jury probably would have reached a different conclusion; and

(3) the party seeking the new trial was taken by surprise when the false testimony was given, or did not know of its falsity until after the trial.

*Robillard*, 146 Vt. at 629, 508 A.2d at 713.

■ Defendant protests that he should not be subject to the third requirement of the *Robillard* test, in that he has contended all along that Ms. Casey's testimony was untrue, and therefore cannot claim "surprise" or lack of knowledge of "falsity" of the evidence. We agree that this test, if applied literally to defendants moving for a new trial based on a recanting prosecution witness, would pose an insuperable burden; after all, many defendants contend during trial, as well as on appeal, that

the prosecuting witnesses are not telling the truth. However, we read this part of the *Robillard* test as incorporating the traditional inquiries as to whether the new testimony being offered is "merely cumulative or only of impeaching effect," and whether it is truly new, not merely undiscovered through lack of diligence. See, e.g., *State v. Jewell*, 150 Vt. at 285, 552 A.2d at 792.

Analyzing defendant's claims under the *Robillard* test, the trial court concluded that it was "reasonably well satisfied" that Ms. Casey's testimony at trial was true and that the jury would not have reached a different conclusion given the detailed testimony of Aldo Ciampi directly implicating defendant in the commission of the crime. Although defendant claims these conclusions are based on incorrect findings of fact, we conclude, after reviewing the hearing on the motion for a new trial, that the findings are not clearly erroneous, V.R.C.P. 52(a), and that they support the court's conclusions.

Although the trial court did not specifically address the third part of the *Robillard* test in its conclusions, we are of the opinion that this test was likewise not met by defendant. The evidence offered, consisting of yet one more version of Ms. Casey's story, was not truly new, but, rather, was cumulative in nature, and was offered for no purpose other than to impeach her earlier testimony at trial. Yet, defendant had ample opportunity at trial to impeach Ms. Casey's credibility by offering evidence of her prior inconsistent statements. See V.R.E. 613 and 801(d)(1)(A).

██ We note that in applying the *Robillard* test, the trial court properly weighed the proffered evidence as to credibility and persuasiveness. That is its prerogative and indeed its obligation on such a motion. See, e.g., *Robillard*, 146 Vt. at 629, 508 A.2d at 713 (case remanded so that court could "determine whether, *in its own view*, [the] testimony at trial was true or false") (emphasis added). Because the disposition of a motion for a new trial is within the court's discretion, its decision will not be reversed unless defendant shows that this discretion was either withheld or abused. *State v. Potter*, 148 Vt. at 63, 529 A.2d at 169. Defendant has failed to make that showing.

█ Defendant also contends in passing that the trial court's findings are somehow suspect because a number of them correspond exactly to those proposed by the State. Although we have often stated our preference that courts prepare their own findings, V.R.C.P. 52(a) specifically provides that "[f]indings of fact shall not be set aside . . . notwithstanding the verbatim adoption by the court of a party's proposed findings." See also Reporter's Notes—1987 Amendment to V.R.C.P. 52 (so long as findings are in proper form, reflect careful review of all the evidence, and are not clearly erroneous, verbatim adoption of proposed findings should not be cause of automatic reversal).

*Affirmed. Defendant's motion for release pending appeal is denied as moot.*