2011 VT 107

# State of Vermont v. Diana Charland

[35 A.3d 124]

No. 10-149

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed September 16, 2011

*William H. Sorrell*, Attorney General, and *David Tartter*, Assistant Attorney General, Montpelier, for Plaintiff-Appellee.

*Anna Saxman*, Deputy Defender General, Montpelier, and *Jeffrey B. Wilson*, Portland, Maine, for Defendant-Appellant.

¶ 1. **Dooley, J.** Defendant appeals the sentence imposed on her following her jury conviction on a charge of driving while intoxicated (DWI), third or subsequent offense. She argues that the trial court improperly enhanced her sentence, without advance notice to her, based on its unsupported assumptions that her husband gave perjured testimony at her trial and that she suborned that false testimony. We affirm.

¶ 2. On July 12, 2009, defendant's stepson drove to the home of his father, defendant's husband, to help him move a freezer into his home. The stepson arrived at the home first and parked his truck in the driveway, waiting for his father. Defendant and her husband arrived a few minutes later in a truck. According to the stepson's trial testimony, defendant was driving the truck. He testified that defendant backed into the driveway, struck the stepson's truck, and then began screaming at him, at which point he called the police. The officer who arrived on the scene testified that after speaking to defendant's stepson, she spoke to defendant, who informed the officer that she had driven to the scene of the accident from Winooski and had backed into the stepson's truck because the truck was not normally there and he was not supposed to be there yet. The officer noticed signs of intoxication and had defendant perform dexterity tests. Defendant failed the tests and was arrested for DWI. While at the police station, defendant changed her statement to say that her husband, not she, drove the truck from Winooski to the scene of the accident. Eventually, her blood-alcohol concentration was tested at .239, which, according to the state chemist's testimony, related back at

the time of operation to .261, more than three times the legal limit.

¶ 3. Defendant did not testify at trial, but her husband testified that he had driven the truck from Winooski to his home, and, after he had entered the house, defendant moved the truck but only from the driveway to the lawn. He did not dispute that an accident had occurred while defendant was driving, but testified that there was no damage to his truck. He admitted on cross-examination that he had submitted an affidavit to police on the day of the accident stating that defendant had been hurriedly backing up in the driveway and could not straighten the vehicle out in time to avoid the accident. He testified that his son told him to write that account in the affidavit.

¶ 4. The jury convicted defendant of DWI, third or subsequent offense. At the sentencing hearing, the trial judge expressed his belief that there had been perjured testimony at the trial. Defendant's attorney did not respond to this comment. Before imposing sentence, the court noted that defendant had continued to drive while intoxicated despite her previous DWI convictions, and then commented as follows: "In addition, there was clearly perjured testimony at this trial. And perjured testimony doesn't come about by itself. It comes about because the defendant invited it." The court imposed a sentence of thirty months to five years, with the expectation that defendant would be placed in a reha-bilitative program after one year in jail. The court also imposed the maximum $2500 fine, noting that "the penalty is particularly needed because of the perjury that I've been alluding to."

¶ 5. On appeal, defendant argues that the trial court erred by basing her sentence, without advance notice, on her suborning perjury when there was no evidence that her husband gave perjured testimony or that, even if he did, she suborned such testimony.

¶ 6. A number of general principles guide our decision. A judge presiding at a trial may rely upon observations made during the trial in sentencing a defendant who was convicted by the jury. See *United States v. Grayson*, 438 U.S. 41, 55 (1978) (reaffirming trial court's authority to take into account willfully false testimony in determining appropriate sentence); *State v. Loveland*, 165 Vt. 418, 423, 684 A.2d 272, 276 (1996) (holding that trial court could consider defendant's testimony and demeanor at trial in fashioning

sentence because defendant's truthfulness at trial is probative of attitude towards society and prospects for rehabilitation); *State v. Noyes*, 157 Vt. 114, 119, 596 A.2d 340, 342-43 (1991) (following *Grayson*). If the sentencing court believes that a defendant offered perjured testimony, the court may take that into account in imposing sentence. See *United States v. Dunnigan*, 507 U.S. 87, 97 (1993) ("It is rational for a sentencing authority to conclude that a defendant who commits a crime and then perjures herself in an unlawful attempt to avoid responsibility is more threatening to society and less deserving of leniency than a defendant who does not so defy the trial process."); see also *Grayson*, 438 U.S. at 55 (same); *Noyes*, 157 Vt. at 119, 596 A.2d at 343 (same).

¶ 7. The same principle applies if the sentencing court finds that a defendant suborned perjury. *Fuller v. State*, 860 A.2d 324, 333 (Del. 2004); see *United States v. Johnson*, 968 F.2d 208, 216 (2d Cir. 1992) (holding that federal sentencing guidelines allow sentencing court to enhance sentence based on finding of suborned perjury even if there is no necessary inconsistency between jury verdict and alleged perjured testimony); *Fabiano v. Wheeler*, 583 F.2d 265, 270 (6th Cir. 1978) (holding, in pre-guideline decision, that "[i]t is one thing to say that a defendant may not be penalized for maintaining her innocence and putting the prosecution to its proof and quite another to sanction the fabrication of a defense"). The rationale of *Dunnigan* that a person who commits perjury to avoid criminal responsibility "is more threatening to society and less deserving of leniency" than a person "who does not so defy the trial process," 507 U.S. at 97, is equally applicable to the subornation of perjury.

¶ 8. In stating this last principle, the critical one in this decision, we must clarify the proof necessary for consideration of the suborned perjury of a witness in the sentencing context. Subornation of perjury commonly involves three elements: (1) the suborner should have known or believed or have had good reason to believe that the testimony would be false; (2) the suborner should have known or believed that the witness would testify willfully and corruptly, and with knowledge of the falsity; and (3) the suborner must have knowingly and willfully induced or procured the witness to give false testimony. *United States v. Washington*, 171 F. App'x 986, 988 (4th Cir. 2006); see also 13 V.S.A. § 2902 (crime of subornation of perjury requires person to procure another to commit crime of perjury); *State v. Bissell*, 106

Vt. 80, 90, 170 A. 102, 106 (1934) (State must prove that suborner "caused a false oath to be taken" and "knew, at the time, that the false oath was taken wilfully, corruptly, and knowingly").

¶ 9. Virtually all of the case law on the consideration of subornation of perjury in sentencing arises in the federal courts under the United States Sentencing Guidelines. The Guidelines provide that a sentence must be increased if "defendant willfully obstructed or impeded . . . the administration of justice," such as by suborning perjury. U.S. Sentencing Guidelines Manual § 3C1.1 cmt. n.4(b) (2010) (stating that suborning perjury falls within conduct covered by Guidelines). The Guidelines also emphasize that "the defendant is accountable for [his] own conduct and for conduct that [he] aided or abetted, counseled, commanded, induced, procured, or willfully caused." *Id.* § 3C1.1 cmt. n.9.

██ ¶ 10. The most difficult of the elements of subornation to demonstrate is the third because it cannot usually be observed in the courtroom and there is rarely external evidence of the interaction between the defendant and the witness with respect to the testimony. Thus, the federal courts have found the third element is satisfied if the evidence raises a plausible inference that the defendant must have participated in the decision to present witness testimony that was known to be false. See *United States v. Bradberry*, 466 F.3d 1249, 1255 (11th Cir. 2006) (concluding that by calling witness whose testimony defendant knew would be false, defendant created inference that he procured false testimony or aided and abetted in its presentation); *United States v. Lowder*, 148 F.3d 548, 553 (5th Cir. 1998) (concluding that trial court made reasonable inference of defendant's suborned perjury based on his pretrial discussion with his attorney about his son's testimony); *United States v. Miller*, 159 F.3d 1106, 1112-13 (7th Cir. 1998) (upholding finding of suborned perjury where testimony of defendant's only witness directly contradicted testimony of government witnesses).

██ ██ ¶ 11. The United States Court of Appeals for the Fourth Circuit has summarized these cases into a general rule that the calling of a witness whom the defendant knows will testify falsely can constitute obstruction of justice sufficient for a sentence enhancement even absent complete proof of subornation of perjury. *Washington*, 171 F. App'x at 988; see *United States v. Johnson*, 261 F. App'x 611, 614 (4th Cir. 2008) (explaining that this

analysis is consistent with majority of circuits that have considered issue). We conclude that this general rule is appropriate, and we adopt it for cases like the instant one, where the inference is strong that defendant must have knowingly aided or abetted procuring the false testimony. In doing so, we reject defendant's argument, based on a dated United States District Court decision, *Harris v. Prast*, 459 F. Supp. 303, 305 (E.D. Wis. 1978), that a finding of subornation of perjury, without independent evidence that the false evidence was given at defendant's direction, deprived defendant of due process of law. It is within our power to define what evidence must be available, and what findings and conclusions must be reached, to allow consideration of the introduction of false evidence at trial in imposing sentence.

¶ 12. We also reject, as inconsistent with reality, defendant's argument that, because the attorney rather than the client is responsible for trial tactics, including calling witnesses, we cannot punish the client for the lawyer's decision to call a particular witness. See *Bradberry*, 466 F.3d at 1255 ("The defendant is directly responsible for the proffering of the perjured testimony before the court."); *Lowder*, 148 F.3d at 553 (concluding that trial court's finding of suborned perjury was supported by court's reasonable inference that defendant discussed with his attorney before trial what his son's trial testimony would be).

¶ 13. With these principles in mind, we review the trial court's factual findings under a clearly erroneous standard and the overall sentencing decision under an abuse-of-discretion standard. See *State v. Corliss*, 168 Vt. 333, 341, 721 A.2d 438, 444 (1999); see also *United States v. White*, 240 F.3d 656, 660-61 (7th Cir. 2001) (stating that sentencing court's finding of perjury is reviewed under clearly erroneous standard).

¶ 14. As an initial matter, the record in this case amply supports the trial court's determination that defendant's husband gave perjured testimony at defendant's trial. The sole issue in dispute at trial was whether defendant operated a vehicle on a public highway. Defendant's stepson testified that he witnessed defendant drive up to his father's home on a public street and pull into the driveway, striking his truck. The officer who arrived at the scene testified that defendant told him that she had driven to the scene of the accident from another town. In the affidavit he submitted the day of the accident, defendant's husband essentially

acknowledged that defendant was the one who had driven into the driveway, causing the accident. At trial, however, defendant's husband — her sole witness — testified that he, not defendant, had driven to his home, and that defendant had driven only from the driveway to the lawn after he had arrived at the home. Apart from the conflict between the husband's initial statement and his testimony, and the conflict between the stepson's testimony and defendant's earlier statement, no reason is given, or even suggested, why defendant would have driven on husband's yard. Thus, the testimony was crafted to give defendant a defense that she did not drive under the influence on a public highway.[*] Having presided over the trial and observed the testimony and demeanor of the witnesses, the trial court was more than justified in concluding that defendant's husband committed perjury at defendant's trial.

¶ 15. Similarly, there is a strong inference that defendant knew the testimony would be false and intended to obstruct justice. Defendant knew the true facts. Her husband's testimony could have no other purpose except to induce the jury to acquit her of the charged crime. Her defense counsel knew that the husband would testify differently from the stepson and stated so in his opening statement to the jury. In fact, the husband's testimony was the only defense evidence at trial. Without it, defendant's only defense was to attack the credibility of the stepson. As discussed above, the calling of the husband as a

---

[*] As defendant appears to admit in her brief, the testimony was very weak for that purpose. The question at trial was whether defendant was driving on a public highway while intoxicated. See 23 V.S.A. § 1201(a). Defendant did not dispute that she was under the influence of intoxicating liquor so the only issue in dispute was whether she drove on a public highway. Under the charge to the jury, the State could prevail on that element in either of two ways: (1) defendant drove on the street to husband's house; or (2) defendant drove in the driveway of the husband's house and caused damage to personal property — that is, the stepson's truck. See *id.* § 1200(7) (defining "highway" to include driveway of single-family or two-family residence of operator if operator causes damage to the personal property of another while operating vehicle in driveway). The husband testified that defendant did not drive on the street, addressing that theory. But the testimony did not directly address the second theory because no one asked him if there was an accident and where it was. Indeed, his garbled testimony suggested that there was an accident and both vehicles were in motion at the time. In contrast, the stepson testified that there was an accident involving property damage to his truck, and that the accident took place in the driveway. Thus, even if the husband's testimony was believed, it is a stretch to say that it provided a defense to the second theory.

witness, knowing that he would testify falsely, completes the elements necessary for the trial judge to rely upon the presence of perjured evidence as a sentence enhancement.

¶ 16. Defendant presents several arguments for why the general principles should not control this case. First, in an effort to demonstrate that her husband did not commit perjury, defendant suggests that her husband's trial testimony was not inconsistent with what he had previously stated in his affidavit submitted on the day of the accident when she was arrested. Such an inconsistency does not appear to be necessary to support the trial court's finding of perjured testimony in this case. Assuming that it is, however, defendant's argument is belied by her husband's statement that defendant "was backing in the driveway, and she was rushing to get in there." He testified that he never told the police that he, not defendant, had driven his vehicle. When asked whether he wrote that defendant was driving, he answered that "I wrote down what I was told to write." He testified that the stepson told him that he (the stepson) would lose his job if he (the husband) did not write the statement as he was told to do.

¶ 17. Second, defendant argues that even if her husband's trial testimony was inconsistent with his prior contemporaneous statement to police, this Court has held that making an inconsistent statement is not equivalent to committing perjury. See *State v. Ladabouche*, 146 Vt. 279, 282, 502 A.2d 852, 855 (1985) ("Presentation of a witness who recants or contradicts his prior testimony is not to be confused with eliciting perjury." (quotation omitted)); see also *State v. Briggs*, 152 Vt. 531, 538, 568 A.2d 779, 782-83 (1989) (drawing distinction between offering perjured and inconsistent testimony). The statements in *Ladabouche* and *Briggs* upon which defendant relies do not aid her cause. In both cases, the defendants claimed that their due process rights had been violated by the prosecutor's willful use of perjured testimony. In both cases, we held that there was no evidence that the prosecutor knowingly used perjured testimony. *Briggs*, 152 Vt. at 538, 568 A.2d at 783; *Ladabouche*, 146 Vt. at 282, 502 A.2d at 855. In contrast, in this case the sentencing court found, based upon its observations at trial, that defendant's husband had perjured himself, and, as noted, the record supports this finding.

¶ 18. Third, defendant suggests that the trial court was precluded from finding perjury because her husband's testimony

was not necessarily inconsistent with the jury's verdict. According to defendant, the jury could have concluded that her husband truthfully testified that she drove only in the driveway but that damage caused by her operating a vehicle in the driveway precluded application of the "driveway" exception to the DWI laws. See 23 V.S.A. § 1200(7) (defining "highway" to exclude driveway serving single- or two-family residence of operator unless operator causes bodily injury or property damage). Defendant cannot avoid the trial court's perjury finding on this basis. Given the sentencing court's responsibility to make an independent finding of perjury, the theoretical possibility that the jury verdict was not based on the jurors' rejection of the alleged perjured testimony did not preclude the court from finding perjured testimony. See *Johnson*, 968 F.2d at 216 (rejecting defendant's argument that sentencing court could enhance his sentence based on its finding of suborned perjury only if there was inconsistency between jury verdict and alleged perjured testimony).

¶ 19. Fourth, and most importantly from her perspective, defendant argues that even if there was sufficient support in the record for the sentencing court to find that her husband committed perjury, there was no support in the record for the court to find that she was in any way involved in suborning that perjured testimony. In support of this argument, defendant notes the unremarkable fact that her husband never testified that she discussed the case with him, let alone that she asked him to commit perjury. She states that she could not have "known" that her husband would testify falsely, noting that friendly witnesses may lie on their own initiative rather than at the direction of a defendant. As we discussed above, this argument is answered by the adoption of the Fourth Circuit rule that calling a witness, knowing the witness will give false testimony, is sufficient to find that the defendant suborned perjury.

¶ 20. Finally, defendant raises a procedural due process argument. She argues that the court denied her due process by failing to provide her with advance notice that it was contemplating enhancing her sentence based on her reliance at trial on her husband's perjured testimony. Defendant starts this argument by relying not on the Constitution but instead on Vermont Rule of Criminal Procedure 32(c)(3)-(4), contending that the rule requires the sentencing judge to warn her of its intention to rely on the allegedly suborned false testimony. That rule requires the sen-

tencing court to "disclose to the defendant, his attorney, and the prosecution, all information *submitted to it* for consideration at sentencing," including the presentence investigation report, "to afford reasonable opportunity for the parties to decide what information, if any, the parties intend to controvert by the production of evidence." V.R.Cr.P. 32(c)(3) (emphasis added). The rule also provides that "[w]hen a defendant objects to *factual information submitted to the court* . . . in connection with sentencing, the court shall not consider such information" without first making findings, following a hearing, that the information is reliable. V.R.Cr.P. 32(c)(4) (emphasis added).

■ ■ ¶ 21. We find unavailing defendant's reliance on Rule 32. Here, the trial court's observation of the testimony and demeanor of defendant's husband and other witnesses was not information submitted to the court for consideration at sentencing. Rather, the court found that defendant had suborned perjury based on its own trial observations unconnected to any information submitted to it for sentencing purposes. We concur with the court in *United States v. Pavlico*, which rejected the defendant's claim that he was entitled to notice of the trial court's intention to enhance his sentence based on his and his wife's perjured testimony. 961 F.2d 440, 445 (4th Cir. 1992). As the court observed, the holding in *Grayson* that a sentencing court does not violate due process by enhancing a sentence for perjury based on its observation of trial testimony "suggests that no extraordinary process is due a defendant when perjurious testimony is used as a factor in sentencing." *Id.* (noting that case law in other federal circuit courts supports this view).

■ ¶ 22. Our response to the applicability of Rule 32 also answers defendant's amorphous due process argument, which relies primarily on *Harris v. Prast*, a decision we have already rejected. Defendant was aware that the trial judge was also assigned to impose sentence on her. Our prior decisions plainly indicated that the court could take into account observations during the trial in determining the sentence to impose. Defendant was aware of her husband's false testimony. Thus, she had all the notice required to inform her that she might need to address that testimony at the sentencing hearing.

¶ 23. Even if we were to hold that defendant was entitled to some kind of notice of the judge's consideration of witness

perjury, we would not find it to be grounds for relief in this case. When the trial court indicated at the sentencing hearing that it was considering that defendant had invited false testimony from her husband, defendant neither objected to the court's consideration of that factor nor asked for a continuance for an opportunity to respond to the court's concern. In fact, following the court's disclosure, defendant made a lengthy statement on her own behalf and never addressed the court's indication that it believed that the husband had committed perjury for her. She could have, at that time, addressed the question of her husband's perjured testimony. Because defendant slept on the right she is now asserting, we do not believe she could prevail, even if we recognized such a right.

¶ 24. Although we have addressed each of defendant's arguments, we acknowledge that the United States Supreme Court held in *Dunnigan* that when a defendant objects to sentence enhancement resulting from the court's conclusion that the defendant committed perjury at trial, the trial court "must review the evidence and make independent findings necessary to establish a willful impediment to, or obstruction of, justice, or an attempt to do the same, under the perjury definition we have set out." 507 U.S. at 95. We see no reason why the same requirement would not apply in a subornation of perjury context such as the instant one. See *Fuller*, 860 A.2d at 333-34. In this case, the trial court made no findings meeting the standards of *Dunnigan*. The court concluded that defendant had suborned her husband's perjured trial testimony, but offered no rationale for that conclusion other than that it was obvious. While defendant's failure to object meant that the *Dunnigan* findings requirement was not triggered, we do not suggest that the court's bare conclusion would have been sufficient if there had been an objection. We affirm on this record because the record demonstrates that the court could reach the conclusion that it did.

*Affirmed.*